**PROJECT ON MILITARY PROCUREMENT,**
Plaintiff,

v.

**DEPARTMENT OF the NAVY, Defendant.**

**Civ. A. No. 88–2130.**

United States District Court, District of Columbia.

April 10, 1989.

Paul J. Seidman, Seidman & Associates, P.C., Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty., Robert E.L. Eaton, Jr., Asst. U.S. Atty., Washington, D.C. (Anne M. Brennan, Naval Sea Systems Command of counsel), Haverford, Pa., for defendant.

Memorandum Opinion

SPORKIN, District Judge.

The plaintiff, Project on Military Procurement ("PMP"), is an organization sponsored by the Fund for Constitutional Government, a non-profit organization. PMP's goal is to make the public, press and Congress aware of waste and fraud in the defense budget as well as to reform the defense procurement system. To achieve this objective, PMP regularly conducts investigations and disseminates information to the public, press and Congress by means of issuing press releases and publishing books and news articles.

Currently, PMP is investigating the United States Department of the Navy's MK–46 Torpedo Program. In the course of that investigation, PMP has attempted to gain certain information through a Freedom of Information Act ("FOIA") request. At issue in this case is whether PMP is entitled to a waiver of fees for documents requested from defendant, the Department of the Navy, pursuant to that FOIA request. *See* 5 U.S.C. section 552(a)(4)(A)(iii). In the alternative, plaintiff claims it is entitled to status as "a representative of the news media." *See id.* sec. 552(a)(4)(A)(ii)(II).

Plaintiff and defendant have filed cross motions for summary judgment. The issues before the Court have been fully briefed, and a hearing was held on February 17, 1989. I now am prepared to rule on these motions.

## I. STANDARD ON MOTION FOR SUMMARY JUDGMENT

To prevail on a motion for summary judgment the moving party must demon-

strate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In this case, the essential, dispositive facts are undisputed. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986).

## II. FACTS

### A. THE MK–46 TORPEDO CONTRACTS

The FOIA requests at the center of this case seek disclosure of fiscal data sheets and all modifications related to Navy contracts No. N00024–83–C–6126 and No. N00024–85–C–6080. These contracts concern the Navy's foreign military sales of MK–46 torpedoes to Canada and Turkey. The MK–46 torpedoes were supplied via a sub-contract with Honeywell, Inc. The Arms Export Control Act, 22 U.S.C. sec. 2751 *et seq.* (1982 & Supp. IV 1986), and relevant Department of Defense ("DoD") regulations permit foreign military sales provided "DoD [does] not make a profit or incur a loss." DoD Inspector General, Report on the Audit of the MK–46 Torpedo Program (Report No. 88–068), Jan. 11, 1988 at 3 ("Inspector General's Report"); *see* 22 U.S.C. sec. 2762.

The DoD Inspector General has determined that the MK–46 contracts at issue in this case contained inflated contract prices in violation of the Arms Export Control Act. As a result of the inflated prices, Honeywell received a surplus payment that was used to off-set the Navy's own Honeywell contract costs.[1]

The facts of this affair first came to public attention in October of 1986. The incident was the subject of numerous news accounts. The primary source for these reports was a press release issued by the plaintiff, Project on Military Procurement.[2] Two years after the initial media attention, the Department of Defense's Inspector General issued his report confirming that Canada and Turkey had in fact been overcharged in connection with their purchases of MK–46 Torpedoes. *See* Inspector General's Report at 3, 6–7, 9.

### B. PLAINTIFF'S FOIA REQUESTS

By letter dated December 10, 1986, plaintiff filed a FOIA request for information related to MK–46 torpedo contract No. N00024–83–C–6126.[3] On July 1, 1987, plaintiff expanded its request to include contract No. N00024–85–C–6080.[4] In addition, plaintiff requested a fee waiver claiming the information was sought "in the public interest." *See* 5 U.S.C. sec. 552(a)(4)(A)(iii). In the alternative, plaintiff requested treatment as a "representative of the news media." *Id.* sec. 552(a)(4)(A)(ii)(II).[5]

On April 22, 1988, defendant denied both the fee waiver and plaintiff's status as a "representative of the news media."[6] Plaintiff appealed this determination to the General Counsel of the Navy. The General

---

**1.** The Inspector General's Report concluded that "if [the irregularities had been] allowed to go unchecked, Canada and Turkey would have been overcharged in excess of $10 million." Inspector General's Report at 3.

**2.** *See, e.g., Review of Torpedo Deal with Turkey, Canada to be Completed Today,* Aerospace Daily, Oct. 31, 1986; *DOD Probing Charges Navy Kept Refunds Due 2 Countries,* Assoc. Press, Oct. 30, 1986 (wire service article); *Navy Said to Have Kept a Refund Due to 2 Allies,* N.Y. Times, Oct. 30, 1986, at A25; *Navy's Torpedo Sales Contract Under Review,* Investor's Daily, Oct. 30, 1986, at 30; *see also Navy Improperly Used Canadian, Turkish Funds,* Christian Sci. Monitor, Feb. 24, 1987, at 2; *U.S. Navy Owes Canada Millions,* Ottawa Citizen, Feb. 24, 1987 at A3; *US*

*Auditors Said to Probe Whether Navy Overcharged 2 Nations on Arms Contract,* Boston Globe, Oct. 30, 1986, at 3; *Canada 'Torpedoed' in Weapons Deal,* Toronto Star, Oct. 29, 1986, at A16; *Pentagon Probing Navy's Role in 2 Sales Involving Honeywell,* Minneapolis Star and Tribune, Oct. 29, 1986.

**3.** *See* Plaintiff's Exhibit 1.

**4.** *See* Plaintiff's Exhibit 5.

**5.** Although such classification would not result in a fee waiver, it would limit fees to "reasonable standard charges for document duplication." *See* 5 U.S.C. sec. 552(a)(4)(ii)(II).

**6.** *See* Plaintiff's Exhibit 13.

Counsel upheld the denial. *See* Plaintiff's Exhibit 15, Letter of General Counsel Reviewing FOIA Request ("General Counsel's Decision"). As a result, plaintiff filed suit in this Court challenging defendant's fee waiver rulings.

## III. DISCUSSION

### A. STANDARD OF REVIEW

In reviewing an agency's fee waiver determination, the Court is to engage in a *de novo* review but limit its inquiry to the record before the agency. *See* 5 U.S.C. § 552(a)(4)(A)(vii).

### B. STANDARD FOR GRANTING WAIVER

The FOIA sets forth a two-part test for determining whether documents shall be furnished without any charge (or at a reduced charge). Under this test, the requester must establish that the information sought (1) "is in the public interest because it is likely to contribute significantly to public understanding of the operations and activities of the government" and (2) "is not primarily in the commercial interest of the requester." *Id.* sec. 552(a)(4)(A)(iii); *see Larson v. CIA*, 843 F.2d 1481, 1482–83 (D.C.Cir.1988).[7]

#### 1. Commercial Interest Of Requester

There is no dispute over the second part of this two-part test. The defendant concedes that the information plaintiff seeks is not primarily in the plaintiff's commercial interest.

#### 2. Public Interest

■ In analyzing the first part of the test, i.e. whether the information is in the public interest, it is helpful to look at four criteria: (1) operations or activities of government as the subject of the FOIA request; (2) informative value, or potential for contribution to public understanding; (3) public understanding as the result of

disclosure; and (4) significance of the disclosure's contribution. *See McClellan Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1285–86 (9th Cir.1987); DoD Freedom of Information Act Program, Subpart F—Fee Schedule, 32 CFR 286.33 (1987); DoD Directive 5400.7-r, sec. 6–103(c)(1)(i)–(iv).

■ The defendant concedes that plaintiff has established that the information requested relates to "operations or activities of government" and will contribute to "public understanding." Therefore, my focus must turn to the two remaining considerations.

Defendant argues that the information sought has little "informative value, or potential for contribution to public understanding." *See* General Counsel's Decision at 3–5. Further, defendant asserts that the release of the requested information is of minimal significance. *See id.*[8]

Defendant advances two rationales for this conclusion. First, defendant argues the information requested is already in the public domain. Second, defendant claims it intends to invoke FOIA exemptions and that much of the material requested will be either withheld or severely redacted. Therefore, defendant claims that, even if the documents sought were informative, withholdings and redactions will render the request worthless. For a variety of reasons, I do not find defendant's arguments persuasive.

#### a. Information Already in the Public Domain

Defendant argues that the information sought is already in the public domain because the requested documents contain information "common to many [Navy] contracts, such as routine procurement administration documents, routing instructions, procurement requests, and boiler plate clauses." *Id.* at 4. Moreover, defendant contends that information unique to the

---

7. The plaintiff bears the initial burden of demonstrating that it has satisfied this public interest analysis. *See Larson*, 843 F.2d at 1483; *National Treasury Employees Union v. Griffin*, 811 F.2d 644, 647 (D.C.Cir.1987).

8. Generally, these two criteria have been enunciated as separate points. They are in fact hopelessly intertwined. In light of this reality and the fact that both parties have failed to adequately distinguish these supposedly discrete considerations, I shall address them jointly.

documents at issue has already been disclosed due to media attention and the release of the DoD Inspector General's Report. *Id.*

### i. Information Common to Contracts

In part, defendant's argument boils down to an assertion that the existence of bureaucratic paperwork—by definition standardized and repetitive—is a sufficient basis to determine a FOIA request is duplicative. This simply cannot be the case.

FOIA requests must be judged in accordance with the information contained within any bureaucratic trappings not vice versa. *See, e.g., Eudey v. CIA,* 478 F.Supp. 1175, 1177 (D.D.C.1979). Thus, it is of little consequence to argue that boiler plate language or standardized forms envelop otherwise informative material. In the present case, defendant has failed to recognize that the substantive contents of even a single document may substantially enrich the public domain and justify a fee waiver. *See id.*

### ii. Prior Media Attention & The Inspector General's Report

The defendant maintains that prior media attention and the issuance of a report by DoD's Inspector General has resulted in complete disclosure of all valuable information related to the MK–46 contracts. This assertion, however, is unsubstantiated. Defendant has provided no basis upon which I could reasonably find that there is no public benefit to be derived from plaintiff's FOIA request.

In contrast, plaintiff has argued persuasively that, despite media attention and the Inspector General's Report, the entire MK–46 story has not been told. In particular, plaintiff notes that information on individual culpability and the extent of the procurement problem have not been reported. Indeed, the Inspector General's Report lends credence to this position. The report states:

> In November 1986, we suggested to the Navy that its review of the circumstances include an evaluation of individual re-

sponsibility for these irregularities, and an evaluation of whether this incident was an isolated case or a systemic problem. In December 1986, the Secretary of the Navy notified the Secretary of Defense that the NAVSEA Inspector General would make an investigation into individual culpability. That investigation was completed in March, 1987, and the report of the results of that investigation was issued on April 14, 1987. *However, as of July 31, 1987, the resulting recommendations for disciplinary actions, endorsed by the Navy Inspector General, had not been acted upon. Also, as of July 31, 1987, we had not seen any indication of a Navy evaluation aimed at determining whether this was an isolated case or systemic problem.*

Inspector General's Report at 9 (emphasis added); *see also id.* at i (indicating that these deficiencies continue). Based on this statement—made long after the media attention engendered by plaintiff's press release—plaintiff justifiably believes that its request will help fill-in "the untold portion of the story."[9]

I am persuaded that, at the very least, the information sought can contribute to the public understanding by enabling plaintiff to supplement the Inspector General's Report. It must be remembered that the Inspector General's investigation was sparked by irregularities uncovered by plaintiff. Without a doubt plaintiff has demonstrated its expertise and effectiveness with regard to uncovering irregularities in the MK–46 Torpedo Program. It seems disingenuous for the Navy to suggest that, because the Inspector General has issued his report, the plaintiff will be unable to learn anything of informative value by reviewing the contracts. Again, the Inspector General's own report indicates that certain aspects of the affair remain either unresolved or undisclosed. Clearly, a review by plaintiff has the potential to contribute to public understanding.

### b. Redactions and Exemptions

■ Defendant's second line of reasoning in denying plaintiff's fee waiver is that

---

**9.** *See* Reply to Defendant's Opposition to Plaintiff's Motion for Summary Judgment at 5.

much of the requested information is likely to be redacted or exempt from disclosure. Defendant is attempting to rely upon contemplated withholdings, pursuant to FOIA exemptions, to defeat plaintiff's request for a fee waiver. *See* 5 U.S.C. sec. 552(b). Defendant, however, overlooks the fact that it has not yet reached a decision to withhold documents pursuant to available FOIA exemptions.

█ Moreover, under the FOIA an agency has the burden of justifying nondisclosure. It must sustain that burden through the submission of affidavits or testimony which identify and explain why the claimed exemptions are available. *See King v. U.S. Department of Justice*, 830 F.2d 210, 217 (D.C.Cir.1987); *Vaughn v. Rosen*, 484 F.2d 820, 826–28 (D.C.Cir.1973), *cert. denied*, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Thus far defendant has failed to make such a showing. Neither affidavits nor testimony have been submitted to support defendant's contemplated withholdings. As a result, there simply is no record on which I could find that the documents defendant contemplates withholding are properly exempt from disclosure.[10]

Allowing the case to proceed as defendant urges would invert the burden of proof and foist upon plaintiff a burden that is not provided under the FOIA. In a fee waiver case, the plaintiff bears the initial burden of demonstrating it has satisfied the public interest analysis; in challenging a decision to withhold documents, the burden is upon the defendant to justify its nondisclosure. *See* 5 U.S.C. sec. 552(a)(4)(B). *Compare Costal States Gas Corp. v. Dept. of Energy*, 617 F.2d 854, 868 (D.C.Cir.1980) (burden on the government agency exerting exemption); *with Larson*, 843 F.2d at 1483 (initial burden of plaintiff).

Plaintiff is prepared to demonstrate that it satisfies the public interest analysis and is entitled to a fee waiver. However, defendant seems to suggest that plaintiff, in order to prevail on its fee waiver request, must also demonstrate that defendant's contemplated withholdings are not validly claimed. Putting aside the fact that withholdings do not yet exist in this case, I cannot understand how the defendant can argue that plaintiff must bear the burden of demonstrating the invalidity of a decision to withhold documents. The law is clear; the burden is on the defendant to justify its withholdings.

In addition, defendant urges this Court to find that the *contemplated* withholdings present a sufficient basis to deny a fee waiver. In effect, defendant's position is that all an agency needs to do to defeat a fee waiver is proffer that the requested documents fall within various FOIA exemptions. This cannot be so. Such a position clearly places the cart before the horse requiring the Court to pass upon the validity of withholding documents before the agency decides the documents are to be withheld.

By proceeding in this manner the defendant is denying plaintiff an opportunity to challenge, before the agency and in court, an actual decision to withhold specific information. As defendant correctly argued, this Court's review in a fee waiver challenge is "limited to the record before the agency." 5 U.S.C. § 552(a)(4)(A)(vii). The defendant indicates that thus far it has only engaged in a cursory examination of the requested documents. Thus, the record of defendant's review and decision to withhold certain of the requested documents is nonexistent. Under these circumstances, I can only wonder at how the defendant expects this Court to properly review the exemptions defendant claims it may ultimately assert.[11]

---

10. Indeed, defendant admitted at a hearing held on February 17, 1989 that it is unprepared to address this issue or to submit a Vaughn Index. *See Vaughn v. Rosen*, 484 F.2d at 826–28; 5 U.S.C. § 552(a)(4)(B).

11. Defendant may be correct in its assertion that the appropriateness of a fee waiver will depend, in part, upon the applicability of the

FOIA exemptions. In an attempt to deal with this situation and expedite these proceedings, I suggested that defendant submit a Vaughn Index or, if necessary, produce the documents it seeks to withhold for *in camera* inspection. *See* 5 U.S.C. § 552(a)(4)(B). By proceeding in such a fashion, the Court would be able to determine both the nondisclosure and fee waiver issues. *See, e.g., Diamond v. FBI*, 532 F.Supp. 216, 234

Defendant cannot be permitted to deny plaintiff a fee waiver because, in theory, defendant has the ability to raise certain FOIA exemptions. It is unfair and contrary to the spirit of the FOIA to deny a financially limited requester, such as PMP, a fee waiver based on an agency determination that is speculative and unreviewable. Clearly, permitting such a result would undermine the very rationale of the fee waiver provisions and this Court's ability to review FOIA determinations made by the defendant. *See Ettlinger v. FBI*, 596 F.Supp. 867, 872–74 (D.Mass.1984).

## C. REPRESENTATIVE OF THE MEDIA

There is no need to address the issue of whether plaintiff qualifies as a "representative of the media." I have concluded that plaintiff is entitled to a fee waiver. Thus, nothing further would be gained by finding that plaintiff is also entitled to a limit on costs as a "representative of the media."

## IV. CONCLUSION

Based on the foregoing, I have determined that plaintiff has adequately demonstrated that its FOIA requests are in the public interest and, therefore, plaintiff is entitled to a fee waiver.

My decision on this matter is further supported by the Department of Defense's own directives. The DoD directives clearly state that "[w]hen the element of doubt as to whether to charge or waive the fee cannot be clearly resolved, [the Department] should rule in favor of the requester." DoD Directive 5400.7-r, sec. 6–103(d); *see also* Arms Export Control Act, 22 U.S.C. sec. 2761(f) ("[a]ny contracts entered into between the United States and a foreign country under the authority of [relevant sections of the Act] shall be prepared in a manner which will permit them to be made available for public inspection to the fullest extent possible consistent with the national security of the United States.").

(S.D.N.Y.1981). Defendant, however, argued that the case before the Court was limited to the fee waiver issue. Therefore, defendant indicated that it would be inappropriate for the

Accordingly, plaintiff's motion for summary judgment shall be granted and defendant's motion for summary judgment shall be denied.

An appropriate order accompanies this opinion.

Court to reach the issue of nondisclosure and order the production of either a Vaughn Index or documents for *in camera* inspection.