David **CARNEY**, Plaintiff–Appellant,

v.

**UNITED STATES DEPARTMENT OF JUSTICE**, Defendant–Appellee.

**No. 724, Docket 93–6133.**

United States Court of Appeals, Second Circuit.

Argued Nov. 17, 1993.

Decided March 23, 1994.

David Carney, pro se.

Robert S. Whitman, Civ. Div., U.S. Dept. of Justice, Washington, DC (Frank W. Hunger, Asst. Atty. Gen., Washington, DC, Patrick H. NeMoyer, U.S. Atty. W.D.N.Y., Leonard Schaitman, Civ. Div., U.S. Dept. of Justice, Washington, DC, of counsel), for defendant-appellee.

Before FEINBERG, TIMBERS and MINER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant David Carney appeals from a judgment entered on April 27, 1993 in the United States District Court for the Western District of New York (Telesca, J.), granting summary judgment in favor of defendant-appellee the United States Department of Justice ("DOJ") and dismissing Carney's complaint in an action brought to compel disclosure of records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (1988). The district court found that Carney was not entitled to discovery under Rule 56(f) of the Federal Rules of Civil Procedure; that there were no genuine issues of fact relating to the adequacy of the DOJ's disclosure of records; that declarations submitted by the DOJ were in the form required by Rule 56(e); and that the DOJ properly denied Carney's demand for the fee waiver available under the FOIA for persons who use disclosed information in the public interest and for the fee reduction available to representatives of the news media. *Id.* § 552(a)(4)(A). In accordance with the following, we reverse on the fee waiver issue and affirm in all other respects.

## BACKGROUND

Carney is a member of the Alaska Bar and a doctoral student in political science at the University of Rochester. He currently is working on a dissertation regarding the role of the DOJ in the federal judicial selection and confirmation process. Beginning in October of 1990, Carney submitted numerous, extensive requests to several subdivisions of the DOJ pursuant to the FOIA.

Carney sent five requests to the Office of Legal Counsel ("OLC"). Through these requests Carney sought, inter alia, personnel information about OLC staff members; records pertaining to numerous Supreme Court nominations and potential nominations; communications between DOJ staff members and the President; records pertaining to the impeachment of certain Supreme Court Justices; records pertaining to Anita Hill; policy statements and other records relating to the judicial selection process; and records relating to OLC practices in complying with FOIA requests, including his own.

The OLC's search produced 111 boxes of documents responsive to Carney's first request, with each box containing about 5000 pages. Twenty-five of these boxes, along with forty-seven individual documents, were made available to Carney. Some of the pages in these boxes and in the individual documents were excised pursuant to the deliberative process and attorney-client exemptions, 5 U.S.C. § 552(b)(5) ("Exemption 5"), and the privacy exemption, *id.* § 552(b)(6) ("Exemption 6"). The remaining eighty-six boxes were not made available to Carney. Nineteen of the eighty-six boxes contained documents originating in other agencies and DOJ subdivisions. The OLC offered to refer these documents to the originating agency or subdivision for processing, but Carney did not respond to the offer. The OLC withheld the remaining sixty-seven boxes pursuant to Exemptions 5 and 6. In response to Carney's other requests, the OLC made about twenty documents available to Carney, some with excisions pursuant to Exemption 6, and withheld about sixty responsive documents pursuant to Exemption 5 and the Privacy Act exemption for information compiled in antici-

pation of civil litigation, 5 U.S.C. § 552a(d)(5).

The Office of Information and Privacy ("OIP") of the DOJ processed requests by Carney directed to the Office of the Attorney General, the Office of Public Affairs and the Office of Legislative Affairs. The requests to these offices sought information similar to that sought from the OLC. The OIP provided numerous items responsive to Carney's requests, including records pertaining to third parties, such as previous FOIA and Privacy Act requesters, as well as DOJ employees. Pursuant to Exemption 6, the OIP excised portions of the documents it provided. The Civil Rights Division responded to Carney's demands with over 450 pages of documents. In twenty-one of these documents personal information was excised pursuant to Exemption 6.

Along with his voluminous FOIA requests, Carney asked each of the DOJ subdivisions to which he had addressed his demands to exempt him from payment of the standard FOIA search fees. Carney contended that he was entitled to the exemptions under the FOIA provision allowing fee waivers or fee reductions "if disclosure of information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." 5 U.S.C. § 552(a)(4)(A)(iii). He also contended, as to some of his requests, that he was entitled to the fee reduction available to members of the news media. *See id.* § 552(a)(4)(A)(ii)(II). Carney argued that he was entitled to the fee waivers because he was writing a dissertation and a book on the subject of the DOJ's role in the judicial selection process and that he intended to write scholarly articles for academic journals and already had written two newspaper articles dealing with the same subject. According to Carney, very little has been written on the role of the DOJ in the selection and confirmation process. In later communications with the DOJ, Carney indicated that he planned to use the disclosed material in college classes that he teaches and that he would make presentations and present papers based on the information.

Carney's requests for fee waivers were denied by each of the DOJ subdivisions. The OLC gave two reasons for denying Carney's request: (1) that Carney had not supplied sufficient evidence that dissemination of any dissertation, book, or article he wrote would be broad enough to justify a waiver; and (2) that, because most of the records produced by the OLC were subject to the attorney-client and deliberative process privileges encompassed in Exemption 5, release of any non-exempt documents would not "contribute significantly" to the public understanding of governmental operations and activities. The OLC estimated that the search costs associated with Carney's request would be about $500 and demanded a $250 advance payment before it would undertake the search. Carney made the required advance payment. The OLC later revised its estimate to $750, and Carney committed himself to pay that amount as well.

The OIP denied Carney's request for a fee waiver, stating that the information sought by Carney already had been released to other requesters and "disclosure of the same material to [Carney] [was] not likely to contribute significantly to an understanding of government operations or activities in the area of federal judicial nominations." The OIP estimated its search fee to be $720, which Carney committed himself to pay. Finally, the Civil Rights Division denied Carney's request for a fee waiver, stating that Carney had failed to demonstrate that disclosure of the records he requested would contribute significantly to the public understanding of governmental operations. The Civil Rights Division assessed $34.80 to Carney in duplication fees, which Carney paid. Carney timely filed administrative appeals challenging the assessment of fees by the various DOJ subdivisions.

Carney filed a complaint in the district court on May 15, 1992, commencing an action to compel compliance with the FOIA demands to which the DOJ subdivisions had not yet responded. The complaint includes allegations that the DOJ improperly withheld records notwithstanding Carney's valid requests under the FOIA; improperly denied his request to be furnished documents without a fee, or at a reduced fee, pursuant to 5 U.S.C. § 552(a)(4)(A)(iii); and wrongfully collected fees from him. Along with his complaint, Carney served interrogatories, document requests and a demand for inspection. He also sent a letter to the DOJ stating his intention to conduct numerous depositions.

In June of 1992, the DOJ moved to stay discovery to allow it to finish processing Carney's FOIA requests. Magistrate Judge Fisher, to whom all non-dispositive motions had been assigned, stayed discovery and set a deadline of December 15, 1992 for the DOJ to process the outstanding FOIA requests. The DOJ subdivisions responded in the manner previously described.

On January 20, 1993, the DOJ moved for summary judgment as to the withheld documents. In support of the motion, it submitted three declarations describing the searches undertaken by the DOJ subdivisions in response to Carney's requests, identifying the responsive documents made available to Carney and explaining how the withheld documents fell within the applicable FOIA exemptions.

Carney did not challenge the DOJ's motion for summary judgment. Instead, he responded with several motions of his own: a motion to compel responses to his previous discovery requests; a motion pursuant to Rule 56(f) of the Federal Rules of Civil Procedure for leave to conduct discovery; and a motion to strike the declarations submitted by the DOJ in support of its summary judgment motion. In support of his Rule 56(f) motion, Carney submitted an affidavit explaining that, based upon over one hundred interviews he conducted with numerous individuals, including current and former DOJ officials, White House personnel, Senators and their staffs, and others, along with other research he had performed, he believed that the DOJ improperly had classified numerous documents as exempt and had failed to disclose the existence of many other documents which should have been provided to him. The latter documents purportedly relate to the role of the DOJ, particularly the OLC, in garnering support for judicial nominees. According to Carney's "information," the OLC is involved in, among other things, writing

speeches for Senators, ghostwriting newspaper articles and leaking information to the press in connection with judicial nominations and confirmations.

Carney argued that discovery was necessary because he was unable to support his argument with admissible proof, such as affidavits and corroborating letters, because his sources spoke to him in confidence. Through discovery, Carney sought to identify the missing documents and to ascertain the role of the DOJ in the nomination and confirmation process with the goal of raising a factual issue as to whether the FOIA exemptions applied to the documents withheld by the DOJ. Carney's motion to strike the DOJ declarations was based on his contention that the declarants did not have personal knowledge as required by Rule 56(e) of the Federal Rules of Civil Procedure. Carney also filed a motion for partial summary judgment on his fee waiver claims, in response to which the DOJ later filed a cross-motion for summary judgment.

The district court denied Carney's motion to strike the DOJ declarations, finding that they were sufficient under Rule 56(e); it denied Carney's Rule 56(f) motion, finding that his affidavit in support of that motion was pure speculation and was insufficient to justify discovery; and it held that Carney was not entitled to a fee waiver because his dissertation, future teaching, scholarly publishing and tentative book were insufficient to establish that release of information to him would be likely to contribute significantly to public understanding of the operations and activities of the government and that his occasional newspaper piece did not merit him status as a representative of the news media. Accordingly, the district court denied Carney's motion for partial summary judgment, granted the DOJ's motion and cross-motion for summary judgment and dismissed the complaint. This appeal followed.

## DISCUSSION

### 1. *Rule 56(f) Motion*

■ In order to prevail on a motion for summary judgment in a FOIA case, the de-

fending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA. *See* 5 U.S.C. § 552(a)(4)(B); *EPA v. Mink,* 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973). Affidavits or declarations [1] supplying facts indicating that the agency has conducted a thorough search and giving reasonably detailed explanations why any withheld documents fall within an exemption are sufficient to sustain the agency's burden. *See Maynard v. CIA,* 986 F.2d 547, 560 (1st Cir.1993); *Perry v. Block,* 684 F.2d 121, 127 (D.C.Cir.1982) (per curiam); *Malizia v. United States Dep't of Justice,* 519 F.Supp. 338, 342 (S.D.N.Y.1981). Affidavits submitted by an agency are "accorded a presumption of good faith," *Safecard Servs., Inc. v. SEC,* 926 F.2d 1197, 1200 (D.C.Cir.1991); accordingly, discovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on their face. When this is the case, the district court may "forgo discovery and award summary judgment on the basis of affidavits." *Goland v. CIA,* 607 F.2d 339, 352 (D.C.Cir. 1978), *cert. denied,* 445 U.S. 927, 100 S.Ct. 1312, 63 L.Ed.2d 759 (1980); *accord Maynard,* 986 F.2d at 556 n. 8; *Simmons v. United States Dep't of Justice,* 796 F.2d 709, 711–12 (4th Cir.1986).

■ In order to justify discovery once the agency has satisfied its burden, the plaintiff must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations, *Goland,* 607 F.2d at 355, or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate, *see, e.g., Washington Post Co. v. United States Dep't of State,* 840 F.2d 26, 28 (D.C.Cir.1988) (nonmoving party produced hard evidence in the form of books and press accounts suggesting privacy exemption did not apply), *vacated on other grounds,* 898 F.2d 793 (1990); *Porter v. United States Dep't of Justice,* 717 F.2d 787, 791–93 (3d Cir.1983) (agency's affidavits in-

---

**1.** In accordance with 28 U.S.C. § 1746 (1988), unsworn declarations, subscribed by the declar-

ant as true under penalty of perjury, may be substituted for affidavits.

cluded conflicting information); *Schaffer v. Kissinger,* 505 F.2d 389, 390–91 (D.C.Cir. 1974) (per curiam) (inadequate reasons stated for application of national security exemption).

Here, the district court found that the declarations submitted by the DOJ were sufficient to meet the agency's burden of proof, and Carney does not challenge this finding. Suffice it to say, the declarations are reasonably detailed and reveal that each of the DOJ subdivisions undertook a diligent search for documents responsive to Carney's requests. With respect to the withheld documents, the declarants describe the documents or classes of documents withheld and explain why they fall within an applicable exemption.

Carney first argues that the affidavit he submitted pursuant to Rule 56(f) provides sufficient grounds to justify discovery and that the district court abused its discretion in denying him discovery. We disagree. The thrust of the allegations in Carney's Rule 56(f) affidavit and indeed his arguments on appeal is (1) that he is in possession of information suggesting that the DOJ has failed to acknowledge the existence of "huge classes" of records responsive to his FOIA requests and (2) that many of the records the DOJ withheld pursuant to the deliberative process and attorney-client privileges actually have been disseminated to the public as part of a propaganda campaign waged by the DOJ in its efforts to garner support for judicial nominees and accordingly were not exempt from disclosure. Essentially, Carney contends that the DOJ has concealed the existence of records and mischaracterized other records in order to avoid disclosing them to him.

Although his information allegedly was gained through over one hundred interviews and significant academic research, Carney does not identify, by name, title or otherwise, any of the individuals he interviewed, nor does he point to any of the published sources on which he supposedly relies. Carney argues that his sources spoke to him in confidence. While we sympathize with Carney's dilemma in this regard, we are nevertheless faced with a complete lack of tangible proof of his allegations. We agree with Car-

ney that, in support of his Rule 56(f) affidavit, he was not required to present evidence that would be admissible at a trial, *see* 10A Charles A. Wright, et al., *Federal Practice and Procedure* § 2740, at 530 (2d ed. 1983), but something more than his bare allegations is needed. Without factual support, Carney's allegations are grounded in mere speculation, and the district court therefore did not abuse its discretion in denying him discovery. *See, e.g., Safecard,* 926 F.2d at 1200 ("Agency affidavits ... cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" (quoting *Ground Saucer Watch, Inc. v. CIA,* 692 F.2d 770, 771 (D.C.Cir.1981)); *cf. Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 251 (2d Cir.1985) (speculative allegations of conspiracy insufficient to justify discovery).

### 2. *Motion To Strike DOJ Declarations*

Carney next contends that the declarations submitted by the DOJ in support of summary judgment were improper under Rule 56(e) because the declarants did not have personal knowledge of the facts relating to the searches undertaken by their respective subdivisions. Each of the declarations was prepared by the individual who had supervised the processing of Carney's FOIA requests. The declaration prepared by Paul Colborn indicates that Colborn was in charge of processing FOIA requests for the OLC and personally supervised Carney's requests and reviewed the withheld documents. The declaration of Miriam Nisbet indicates that she is the Deputy Director of the OIP's Office of Policy and Communication. It is apparent from the record that she was personally involved in processing Carney's requests. In her declaration, Nisbet describes in detail OIP's processing of Carney's requests to the Office of the Attorney General, the Office of Public Affairs and the Office of Legislative Affairs. Finally, the declaration of Nelson Hermilla indicates that he is the Chief of the FOIA/Privacy Act Branch of the Civil Rights Division and that he supervised the processing of Carney's requests to the Division.

■ An affidavit from an agency employee responsible for supervising a FOIA search is all that is needed to satisfy Rule 56(e); there is no need for the agency to supply affidavits from each individual who participated in the actual search. *See Maynard*, 986 F.2d at 560; *Safecard*, 926 F.2d at 1201. The DOJ's submissions thus were proper.

### 3. *Fee Waivers*

■ The FOIA permits agencies to charge search and duplication fees to requesters.[2] 5 U.S.C. § 552(a)(4)(A). Section 552(a)(4)(A)(iii) provides that the fees shall be waived or reduced "if disclosure of the information is in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester." Carney contends that he is entitled to this fee waiver.[3] The district court, and hence this Court, must review an agency's determination on a fee waiver issue de novo, but only with reference to the record before the agency. 5 U.S.C. § 552(a)(4)(A)(vii). Because we find that the DOJ and the district court applied an unduly restrictive construction to the public interest fee waiver provision, we remand to the district court for further consideration of this matter.

■ To establish his right to a fee waiver under the public interest provision, the burden was on Carney to establish that the disclosure of information was in the public interest and was not primarily in his commercial interest. *See National Treasury Employees Union v. Griffin*, 811 F.2d 644, 648 (D.C.Cir.1987). The DOJ does not dispute that disclosure to Carney was not primarily in his commercial interest. In deter-

mining whether disclosure of records will contribute significantly to the public's understanding of the operation or activities of the government, it is relevant to consider the subject matter of the requests and the ability of the requester to disseminate the information. *See Larson v. CIA*, 843 F.2d 1481, 1483 (D.C.Cir.1988) (per curiam).

Here, we have little trouble concluding that the subject matter of Carney's requests—the role of the DOJ in the judicial selection process—is relevant to the public's understanding of government. In support of its position that disclosure to Carney would not be in the public interest, the DOJ first reasons that Carney's use of any disclosed records in his dissertation, scholarly articles, college classes, panels and conventions and in his tentative book simply would not reach a large enough audience to contribute "significantly" to the public's understanding in this area. In this regard, the DOJ relies on its regulation interpreting the public interest fee waiver provision, which requires that disclosure improve the understanding of "the public at large" and not just "the individual understanding of the requester or a narrow segment of interested persons." 28 C.F.R. § 16.10(d)(2)(iii) (1993).

As applied in this case, we believe the DOJ's interpretation of the fee waiver provision is unreasonable. As we understand the DOJ's position, no fee waiver would be granted to one unable to shoulder the formidable burden of demonstrating that any records released actually will be disseminated to a large cross-section of the public. This position is not realistic. Information need not actually reach a broad cross-section of the public in order to benefit the public at large.[4]

---

**2.** An agency also may charge document review fees to commercial requesters. 5 U.S.C. § 552(a)(4)(A)(ii)(I).

**3.** Carney also contends that he is a "representative of the news media" and thus may only be assessed duplication costs in connection with his FOIA requests. *See* 5 U.S.C. § 552(a)(4)(A)(ii)(II). Although we doubt that Carney is eligible for this fee reduction, we need not address the issue in light of our conclusion that Carney is entitled to the public interest fee waiver.

**4.** The legislative history concerning the present fee waiver provision indicates that there was some dispute as to whether the requester must disseminate the information obtained through FOIA requests in order to qualify for the public interest fee waiver. Senator Leahy believed that a waiver might be appropriate if the requested record enhanced the understanding of only a single person, see 132 Cong.Rec. S14,298 (daily ed. Sept. 30, 1986), while Senator Hatch thought the term "public" should be "applied so as to require a breadth of benefit beyond any particularly narrow interests that might be presented."

For instance, the DOJ suggests that, because Carney's dissertation and proposed articles and book on the role of the DOJ in the judicial selection process are scholarly in nature, they will not reach a general audience and hence will not benefit the public at large. Such work by its nature usually will not reach a general audience, but, by enlightening interested scholars, it often is of great benefit to the public at large. To suggest otherwise is to ignore the important role of academe in our democracy. The relevant inquiry, as we see it, is whether the requester will disseminate the disclosed records to a reasonably broad audience of persons interested in the subject.

From the information he submitted to the DOJ, we are satisfied that Carney will disseminate the disclosed records to a sufficiently broad audience of students and academics interested in his work. There is evidence in the administrative record that very little has been written regarding the role of the DOJ in the selection process, and the DOJ does not dispute this. Moreover, Carney submitted evidence that he is a serious scholar, qualified to perform research on this subject. Thus, we are satisfied that Carney's work is likely to be considered by other scholars. While it is true that Carney's book is only tentative, the fact that he is working on a related dissertation is sufficient evidence, for purposes of the public interest fee waiver, to conclude that his book will be completed. Thus, we reject the DOJ's contention that Carney was required to prove that his articles and book would be published.

 As alternative reasons for denying Carney's requests for fee waivers, the DOJ asserts that most of the records Carney requested were exempt from mandatory disclosure and that the non-exempt records either already were in the public domain or were not of interest to the public. We consider these assertions in turn. First, under the circumstances of this case, we do not believe that it was proper to deny the fee waivers simply because the records may have been exempt from disclosure. A fee waiver

request should be evaluated based on the face of the request and the reasons given by the requester in support of the waiver. *Cf. Project on Military Procurement v. Department of the Navy,* 710 F.Supp. 362, 367 (D.D.C.1989) (rejecting argument that fee waiver should be denied because documents may be exempt). Thus, it would be proper to deny a fee waiver on this basis only if the request was for patently exempt documents. If the rule were otherwise, requesters might be deterred from testing the bounds of the FOIA exemptions. An agency could require a requester who is otherwise entitled to a fee waiver to make payment even before the agency's claimed exemption has been tested in court. Moreover, if the request is for records that should be disclosed in the public interest, the agency should not be allowed to charge for searching the records, because the requester is acting in the public interest by attempting to obtain the records.

 The DOJ's assertion that disclosure to Carney would not significantly contribute to the public's understanding because much of the information disclosed to Carney already was in the public domain also is questionable as applied in this case. *See* 28 C.F.R. § 16.10(d)(2)(ii) (information already public unlikely to benefit public). We agree that, in some instances, it may be appropriate to deny a fee waiver because the requested records are available from public sources. If, for example, at the time of the request the requested records are readily available from other sources, then it is logical to conclude that further disclosure by the agency will not significantly contribute to the public's understanding. However, the mere fact that particular records have been released to other requesters does not mean that the information contained in the records is readily available to the public. *Cf. Fitzgibbon v. Agency for Int'l Dev.,* 724 F.Supp. 1048, 1051 (D.D.C. 1989) (records were not in public domain merely because they were available in agency's public reading room). In this case, the OLC and OIP merely stated that the records Carney requested had been released to other

132 Cong.Rec. S16,505 (daily ed. Oct. 15, 1986). Our holding here is consistent with Senator Hatch's view in that we conclude that Carney

has shown that disclosure to him will have a sufficient "breadth of benefit" beyond his own interests.

requesters without explaining how these records were readily available to the public. Accordingly, Carney's requests for fee waivers should not have been rejected for this reason.

Finally, the DOJ asserts that many of the records released to Carney were not of interest to the public. Indeed, several of Carney's requests apparently did not relate to his academic research. For instance, Carney requested a large number of records relating to the DOJ's processing of his own FOIA requests; and he did not indicate how disclosure of this information to him would be in the public interest. We suspect that Carney requested these records in preparation for litigation with the DOJ over his FOIA requests, in which case a fee waiver is inappropriate. *See McClellan v. Ecological Seepage Situation v. Carlucci*, 835 F.2d 1282, 1287 (9th Cir.1987). Accordingly, we find that Carney properly was required to pay for the costs associated with these requests. On remand, the district court should consider the extent to which Carney's requests relate to his actual research and reduce the fees assessed to Carney proportionately.

## CONCLUSION

For the foregoing reasons, we reverse the judgment of the district court to the extent it dismissed Carney's claims relating to fee waivers and remand the case for consideration by the district court in a manner consistent with the foregoing. We affirm the judgment of the district court in all other respects.