**Matthias DOOLITTLE, Plaintiff,**

v.

**U.S. DEPARTMENT OF JUSTICE, Drug Enforcement Agency, and U.S. Department of Justice, Office of Information and Privacy, Defendants.**

No. 00–CV–1412.

United States District Court,
N.D. New York.

May 3, 2001.

Matthias Doolittle, Utica, Plaintiff, Pro Se.

Hon. Daniel J. French, United States Attorney, Syracuse, NY (William H. Pease, of Counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

On September 18, 2000, plaintiff Matthias Doolittle ("Doolittle") commenced the instant action against defendants U.S. Department of Justice, Drug Enforcement Agency ("DEA"), and U.S. Department of Justice, Office of Information and Privacy [1] ("OIP") (collectively, the "defendants") pursuant to the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), seeking access to certain records concerning himself maintained by DEA.

Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56, on the grounds that plaintiff has received all of the requested information to which he is entitled under the FOIA. Plaintiff opposes.

### II. FACTS

This action arises out of Doolittle's request for DEA records [2] concerning his arrest on drug charges in November 1996. The following are the facts as stated in the light most favorable to the non-moving plaintiff.

On December 9, 1999, Doolittle wrote to DEA requesting the release of records pertaining to himself. On December 15, 1999, DEA acknowledged receipt of plaintiff's request and indicated that it would be processed in the order it was received. On January 7, 2000, DEA released portions of

---

**1.** Incorrectly named in the complaint as "U.S. Department of Information and Privacy."

**2.** Doolittle's request was for "FBI records;" however, because the request was sent to

DEA, it was treated as a request for DEA records. Doolittle does not dispute that the appropriateness of this action by DEA.

17 pages of records to Doolittle in response to his request. Nine pages were withheld in their entirety, and portions of the 17 pages released to plaintiff were redacted on the basis of exemptions provided under the FOIA.

Furthermore, on January 6, 2000, DEA indicated that Doolittle was mentioned in several "related" files, and that he would have to pay a search fee to have these files processed. By letter dated May 29, 2000, Doolittle agreed to pay this search fee. Through an apparent error by DEA, it appears that this letter was mishandled and his request was not acted upon until after the commencement of this litigation.

Doolittle was dissatisfied with DEA's response to his FOIA request. On February 10, 2000, he appealed DEA's response to the OIP. Doolittle objected to DEA's basis for withholding the records which were not provided to him, and also asserted that DEA had failed to respond to his request for records relating to a second search of his residence. His appeal was denied on August 23, 2000. Plaintiff commenced the instant action on September 18, 2000.

Subsequent to the commencement of this action, DEA acted upon Doolittle's letter of May 29, 2000. On February 9, 2001, portions of two pages of DEA records were released to plaintiff. Five pages were withheld in their entirety. DEA invoked FOIA exemptions (b)(2), (b)(3), (b)(7)(C), (b)(7)(D), and Privacy Act exemption (j)(2) in support of its decision to withhold these records. With regard to Doolittle's claim that DEA had failed to release records relating to a second search of his residence, DEA Paralegal Specialist Leila I. Wassom ("Wassom") stated:

> Regarding the plaintiff's allegation that DEA failed to provide documents to the plaintiff concerning an alleged "second ... search of the plaintiff's residence ..." [sic] The plaintiff does not provide a date on which the alleged search took place. DEA has released all non-exempt documents pursuant to the plaintiff's FOIA/PA request.

(Wassom Supp. Decl. at 2.)

Doolittle submitted a response to Wassom's supplemental affidavit ("Pl.Response"). Doolittle attached a portion of the minutes of his sentencing hearing to this response as Exhibit 1. During the sentencing hearing, Doolittle's attorney stated that the alleged second search occurred "approximately a day later, or maybe even later that same day, some twelve hours later or so ..." after the initial search of his residence. (Exh. 1 to Pl. Response at 12.)

### III. *STANDARD OF REVIEW*

#### A. *Summary Judgment*

■ A moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The ultimate inquiry is whether a reasonable jury could find for the nonmoving party based on the evidence presented, the legitimate inferences that could be drawn from that evidence in favor of the nonmoving party, and the applicable burden of proof. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In determining a motion for summary judgment, all inferences to be drawn from the facts contained in the exhibits and depositions "must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Hawkins v.*

*Steingut,* 829 F.2d 317, 319 (2d Cir.1987). Nevertheless, "the litigant opposing summary judgment 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial." *Quinn v. Syracuse Model Neighborhood Corp.,* 613 F.2d 438, 445 (2d Cir.1980) (quoting *SEC v. Research Automation Corp.,* 585 F.2d 31, 33 (2d Cir.1978)). Pro se litigants are permitted "special latitude in responding to a summary judgment motion." *Shepherd v. Fraisher,* 1999 WL 713839, at *2 (S.D.N.Y.1999) (citing *Gonzalez v. Long,* 889 F.Supp. 639, 642 (E.D.N.Y.1995)).

## IV. *DISCUSSION*

■■■ On a motion such as this, for summary judgment under the FOIA, "the defending agency has the burden of showing that its search was adequate and that any withheld documents fall within an exemption to the FOIA." *Carney v. Department of Justice,* 19 F.3d 807, 812 (2d Cir. 1994). Through affidavits or other proof, the defendant must demonstrate the adequacy of the search it conducted pursuant to the plaintiff's FOIA request and give "reasonably detailed explanations why any withheld documents fall within [a claimed] exemption . . . ." *Carney,* 19 F.3d at 812. Moreover, a governmental agency's affidavits are "accorded a presumption of good faith." *Id.* at 812 (*quoting SafeCard Servs., Inc. v. Sec. Exch. Comm'n,* 926 F.2d 1197, 1200 (D.C.Cir.1991)). Accordingly, if the agency's submissions are adequate on their face, it is not necessary for

the district court to conduct an *in camera* review of the withheld documents. *Id.*[3]

If this burden is met, then it is incumbent upon the plaintiff to show either bad faith on the part of the agency, or that the claimed exemption should not apply. *See, e.g., Ferguson v. Federal Bureau of Investigation,* 83 F.3d 41, 43 (2d Cir.1996); *Carney,* 19 F.3d at 812; *Triestman v. Department of Justice,* 878 F.Supp. 667, 672 (S.D.N.Y.1995) (summary judgment should be denied if plaintiff demonstrates bad faith sufficient to impugn the facial adequacy of an agency's affidavits).

On this motion, Doolittle raises two challenges to DEA's withholding of requested documents. First, as to the records pertaining to the alleged second search of his residence, Doolittle argues that DEA's response based on his failure to provide the date of this search is inadequate. Second, Doolittle argues that, as to the invocation of exemption (b)(7)(D) to protect the identity of certain confidential informants, DEA waived the right to invoke this exemption by voluntarily disclosing the identity of those informants at his plea hearing. Each of these challenges are discussed in turn.

■■■ One of plaintiff's primary contentions in this case is that there are records pertaining to a second search of his residence that were not released by the DEA. Defendants' response to this contention is simply that plaintiff failed to identify the date of this alleged second search. This response is entirely insufficient to satisfy their obligations under the FOIA.

---

**3.** However, the mere fact that an agency submits affidavits in support of its decision to withhold the records sought by the plaintiff does not relieve a district court of the obligation to review that decision under 5 U.S.C. § 552(a)(4)(B) (in an action under the FOIA challenging the withholding of agency records, "the court shall determine the matter de novo, and may examine the contents of such

agency records in camera to determine whether such records or any part thereof shall be withheld under any of the exemptions set forth in subsections (b) of this section, and the burden is on the agency to sustain its action."). *See Halpern v. Federal Bureau of Investigation,* 181 F.3d 279, 287–288 (2d Cir. 1999).

Doolittle is not required to identify *by date* the documents which he seeks. It is sufficient under the FOIA if he provides the agency with "reasonably clear notice of what the plaintiff sought ...." *Hemenway v. Hughes,* 601 F.Supp. 1002, 1005 (D.D.C. 1985). More importantly, Doolittle has identified the approximate date of this alleged second search through the attached transcript of his sentencing hearing. Therefore, DEA has failed to meet its "burden of showing that its search was adequate" as to these documents, *Carney,* 19 F.3d at 812, and cannot rely upon Doolittle's purported failure to provide the date of the alleged second search to refuse to attempt to locate the documents.[4]

■ In addition to his objection based on DEA's inadequate response to his request for documents relating to the alleged second search of his residence, Doolittle also objects to the withholding of certain documents pursuant to exemption (b)(7)(D). He argues that defendants have waived the privileged nature of some of the records which were withheld pursuant to (b)(7)(D) because prosecutors disclosed the identity of the confidential informants in those records in open court during his sentencing hearing.

In support of the invocation of this exemption, defendants provide two declarations by Wassom to support their assertion that the informants identified in these documents cooperated with the Government in consideration of an implied promise of confidentiality. (Wassom Decl. at 8–9; Wassom Supp. Decl. at 4–5.)[5]

Plaintiff does not challenge the underlying basis for the withholding of documents pursuant to (b)(7)(D) in this case. Instead, his argument is that as to the documents withheld pursuant to that exemption, any expectation of confidentiality on the part of such informants was waived by the voluntary disclosure of their identities during his sentencing hearing. (Pl. Mem. at 4.) In support of his argument, Doolittle relies upon *Cottone v. Reno,* 193 F.3d 550 (D.C.Cir.1999), for the proposition that "[u]nder our public-domain doctrine, materials normally immunized from public disclosure under FOIA lose their protective cloak once disclosed and preserved in a permanent public record." *Id.* at 554 (addressing applicability of exemptions (b)(3) and (b)(7)(C) to documents disclosed at trial). Because the policy concerns underlying the confidential informant exemption differ significantly from those underlying the exemptions at issue in *Cottone,* Doolittle's argument must be rejected.

Unlike the exemptions relating to wiretapping or personal privacy (which balance the individual right to privacy with the public interest in disclosure of government records), the exemption relating to confidential informants is predicated upon a promise, either express or implied, that the identity of such an informant will not be disclosed by the Government beyond

---

**4.** It is not apparent from the record in this case whether DEA did, in fact, conduct a search that would have located the requested documents if such documents existed. If so, then DEA should expressly state this fact in future correspondence with Doolittle.

**5.** Defendants, or more precisely (and troubling) Paralegal Wassom, argue that the disclosure of the identities of the confidential informants in the sentencing hearing did not waive the privileged nature of these docu-

ments because such disclosure falls within the doctrine of "practical obscurity." (Wassom Supp. Decl. At 5) (citing *Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989).) The practice of submitting legal arguments through the declaration of a paralegal is *improper,* and such arguments will *not* be considered. Wassom's declaration is considered on this motion *solely* for the factual assertions contained therein.

the extent necessary for the use of the information provided by the informant. At the time this promise is made, the extent of any such disclosure cannot be known, but it can reasonably be inferred that it might include the disclosure of the informant's identity during a prosecution resulting from the informant's assistance. *United States Dept. of Justice v. Landano,* 508 U.S. 165, 174, 113 S.Ct. 2014, 124 L.Ed.2d 84 (1993) ("A source should be deemed confidential if the source furnished information with the understanding that the [Government] would not divulge the communication except to the extent the Bureau thought necessary for law enforcement purposes"). Because the Government's promise of confidentiality to an informant is intended to apply notwithstanding the type of limited disclosure present here, such disclosure should not constitute a waiver of the Government's promise to keep the informant's identity confidential. *See Neely v. Federal Bureau of Investigations,* 208 F.3d 461, 466 (4th Cir.2000) ("we have held that the proscription of involuntary disclosure provided by the Exemption [ (b)(7)(D) ] does not disappear if the 'identity' of the 'confidential source' later becomes known.")(internal citation and quotation marks omitted).

Moreover, it is clear that courts that have considered the issue have held that the disclosure of a confidential informant's identity during court proceedings does not constitute a waiver of the informant's expectation of privacy for purposes of (b)(7)(D). *See, e.g., Ferguson,* 83 F.3d at 42; *Neely,* 208 F.3d at 466 ("once the prerequisites of a 'confidential source' and a record compiled 'in the course of a criminal [or national security] investigation' are satisfied, Exemption 7(D) protects from

disclosure 'information furnished by [that] confidential source.' "); *Parker v. Department of Justice,* 934 F.2d 375, 380 (D.C.Cir.1991). Accordingly, this section was properly invoked for the withholding of such documents, and plaintiff's complaint must be dismissed insofar as it seeks disclosure of these documents.[6]

## V. CONCLUSION

After careful consideration of the objections and submissions of the parties, the relevant parts of the record, and the applicable law, it is hereby

ORDERED that defendant's motion for summary judgment is GRANTED in part and DENIED in part as follows:

1. Defendants' motion is DENIED insofar as it relates to the failure to disclose any documents which may exist as to an alleged second search of the residence of plaintiff Matthias Doolittle at 1216 5th Avenue, Troy, New York; and

2. Defendants' motion is GRANTED as to all other documents; and

3. Defendants are hereby ORDERED to either produce documents in its possession relating to an alleged second search of the residence of plaintiff Matthias Doolittle at 1216 5th Avenue, Troy, New York, or to offer a satisfactory explanation as to why no such documents have been produced.

The Clerk is directed to enter judgment accordingly and to close the file. Jurisdiction is retained for the sole purpose of ensuring compliance with this order by the defendants.

IT IS SO ORDERED.

---

6. Doolittle also argues that the erroneous failure to act upon his May 29, 2000, letter by DEA calls into question the adequacy of the search which was conducted in his case. No such inference can be drawn from the mishandling of his letter, and he offers no other credible basis to question the search in this case.