**Robert A. GILLIN, Plaintiff, Appellant,**

v.

**INTERNAL REVENUE SERVICE, Defendant, Appellee.**

**No. 92–1803.**

United States Court of Appeals, First Circuit.

Submitted Sept. 12, 1992.

Decided Dec. 7, 1992.

Robert A. Gillin, on brief, pro se.

Jeffrey R. Howard, U.S. Atty., and Gretchen Leah Witt, Chief, Civ. Div., on brief for defendant, appellee.

Before BREYER, Chief Judge, TORRUELLA and SELYA, Circuit Judges.

PER CURIAM.

The *pro se* appellant, Robert Gillin, lives in New Hampshire and files his federal income tax returns with the Internal Revenue Service office in Andover, Massachusetts. In early 1989, Mr. Gillin learned that IRS agents in Jacksonville, Florida, were conducting a "field examination" of his 1985 income tax return, using records it had obtained from the Andover office. The IRS asked Mr. Gillin to consent to an extension of the limitations period for issuing a statutory notice of tax deficiency. Mr. Gillin refused. The IRS completed its examination and concluded that there was no change in Mr. Gillin's tax liability, and therefore no reason to issue a notice of deficiency.

In July 1989, Mr. Gillin asked the IRS to release five categories of documents to him under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. The categories were:

1) The transcripts of Mr. Gillin's "Individual Master Files" for 1982 through 1988.

2) All documents "pertaining" to Mr. Gillin in the IRS' "Lien Files."

3) All "documents and procedural rules used by [the Andover office] to transfer your jurisdiction of our records to the Jacksonville IRS office."

4) All "documents used as a basis to conclude there was a 'deficiency' in our 1985 tax return filed in Andover Service Center that authorized Jacksonville IRS to request an extension."

5) All documents pertaining to Mr. Gillin "that are currently in the criminal investigation division."

The IRS supplied Mr. Gillin with transcripts of his Individual Master Files. It told him that it had searched its lien files and the files of its Criminal Investigation Division, and found no documents concerning him. It took a narrow view of his two remaining requests. First, the IRS said that because the transfer of records from Andover to Jacksonville did not involve a transfer of "jurisdiction," there were no rules or documents responsive to Category # 3. Second, it said that because it had found no deficiency in Mr. Gillin's 1985 tax return, there were no documents responsive to Category # 4, which had asked only

for documents used as a basis to conclude that there *was* a deficiency.

In January 1990, after he had pursued his administrative appeals without gain, Mr. Gillin filed a *pro se* FOIA action in the New Hampshire federal district court. He then served the Internal Revenue Service with a number of discovery requests. On the government's motion, the district court stayed all discovery pending the IRS' response to the complaint. The IRS filed a dispositive motion which, because it was accompanied by a number of evidentiary declarations, was in effect a motion for summary judgment. The district court deemed the IRS' response adequate and granted judgment accordingly.

Mr. Gillin then moved to alter or amend the judgment. The district court denied the motion in all respects except one. It agreed with Mr. Gillin that the IRS had read too narrowly his request for documents concerning the transfer of "jurisdiction" over his tax records. By "harping on the word 'jurisdiction,'" the court said, the IRS "exalts the form of Mr. Gillin's *pro se* request over its substance." Mr. Gillin had identified a number of standard forms typically used by the IRS when it transferred documents between offices. The court instructed the IRS to search for and produce any such forms generated during the transfer of Mr. Gillin's tax records from Massachusetts to Florida. The IRS eventually submitted evidentiary declarations describing the ensuing search and its results, and produced a number of responsive documents, redacting certain information that it claimed was exempt from disclosure under the FOIA. The district court issued a "post-judgment judgment," and this appeal followed.

■ We affirm. Summary judgment is called for in FOIA cases when "the defending agency ... prove[s] that each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the [FOIA's] inspection requirements." *Perry v. Block*, 684 F.2d 121, 126 (D.C.Cir.1982). *Cf. Weisberg v. United States Department of Justice*, 745 F.2d 1476, 1485 (D.C.Cir.1984) (in order to show that no genuine issue of material fact exists, agency must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents). By the time the district court closed the books on Mr. Gillin's lawsuit, it was fully justified in concluding that the IRS had satisfied its burden with respect to each of the five categories of documents identified in the FOIA request.

1. *Transcripts of Individual Master Files*—The IRS gave Mr. Gillin all of the documents he asked for in this category. According to the declaration of Clare Coelho, a disclosure officer in the IRS' Andover office, she sent Mr. Gillin his "IMF transcript for the years 1982 to 1988." [1]

2. *Documents in Lien Files*—The IRS submitted the declaration of Elaine Tinker, a disclosure officer in its Portsmouth, New Hampshire office, to prove that there were no documents pertaining to Mr. Gillin in its lien files. The declaration related how Ms. Tinker had searched the relevant records and found no liens against Mr. Gillin.

■ Mr. Gillin argues that Ms. Tinker's search could not have been adequate because he was able to discover on his own, through a search at his local registry of records, a lien the IRS had placed on property which he says belongs to him. He submitted a Notice of Federal Tax Lien against property located at 274 Baboosic Lake Road in Merrimack, New Hampshire, and an affidavit attesting to his ownership of that property.

It matters not, however, whether Mr. Gillin actually owns the property on which the IRS placed the lien. What matters, for

---

1. Mr. Gillin claims for the first time in his appellate brief that the IRS gave him the IMF transcripts for 1984 through 1988, but withheld the transcripts for 1982 and 1983. Because he did not make this allegation in the district court, we will not consider it. *See United States v. Krynicki*, 689 F.2d 289, 291 (1st Cir.1982) (appellate courts ordinarily will not consider issues not raised below). Even if we considered it, we could give it no weight, because it is not supported by any competent evidence. *See Gooley v. Mobil Oil Corp.* 851 F.2d 513, 515 n. 2 (1st Cir.1988) (representations in brief are an "impuissant surrogate" for a record showing).

our purpose, is that the notice of lien did not identify Mr. Gillin as the responsible taxpayer or as the owner of the property attached. Rather, the notice named the taxpayer as "J & P Janitorial Services, a Corporation," an entity with which Mr. Gillin claims to have no affiliation.

■ The adequacy of an agency's search "is measured by the reasonableness of the effort in light of the specific request." *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986). Mr. Gillin specifically asked the IRS to look for documents pertaining to him. He did not tell the IRS to look for liens against J & P Janitorial Services, or for liens placed on the property at 274 Baboosic Lake Road in Merrimack, New Hampshire, nor did he give the IRS any reason to believe that documents mentioning that corporation or that address would "pertain" to him. The fact that the IRS did not find the lien, therefore, says nothing at all about the adequacy of its search.

3. *Documents Used to Transfer "Jurisdiction"*—We agree with the district court that the IRS' initial response to this category of the request was insufficient, based as it was on a cramped reading of the term "jurisdiction." However, the district court resolved that problem, and on appeal we need determine only whether the IRS was entitled to redact portions of the responsive documents as exempt from FOIA disclosure.[2]

■ According to the IRS' uncontroverted evidentiary declarations, the redacted information consisted entirely of Differential Function (DIF) scores. DIF scoring is a mathematical technique used to identify tax returns most in need of examination or audit. The IRS closely guards information concerning its DIF scoring methodology because knowledge of the technique would enable an unscrupulous taxpayer to manipulate his return to obtain a lower DIF score and reduce the probability of an audit.

Such information is exempt from FOIA disclosure under 5 U.S.C. § 552(b)(3), which says that the FOIA does not apply to matters specifically exempted from disclosure by another statute, and 26 U.S.C. § 6103(b)(2), which exempts from disclosure "standards used or to be used for the selection of returns for examination, or data used or to be used for determining such standards." *See, e.g., Long v. Internal Revenue Service,* 891 F.2d 222, 224 (9th Cir.1989); *Yon v. Internal Revenue Service,* 671 F.Supp. 1344, 1347 (S.D.Fla. 1987); *Naranjo v. Internal Revenue Service,* 62 A.F.T.R.2d 88–5217, 1988 WL 126570 (E.D.Ky.1988). *See also Aronson v. Internal Revenue Service,* 973 F.2d 962, 963–65 (1st Cir.1992) (explaining relationship between § 552(b)(3) and § 6103).

4. *Documents Used to Conclude There Was a Deficiency*—Mr. Gillin asked for: Copies of all documents used as a basis to conclude there was a 'deficiency' in our 1985 tax return filed in Andover Service Center that authorized Jacksonville to request an extension.

■ The IRS took the position that it had no documents responsive to this part of Mr. Gillin's request because the request asked for documents used to conclude that there *was* a deficiency, and the IRS had concluded that there was *not* a deficiency. In the district court, and on appeal (but apparently not during the administrative process), Mr. Gillin has argued that his request entitled him to the documents used to conduct, or created in the course of, the field examination, even though the examination did not lead the IRS to calculate a deficiency. The district court agreed with the IRS and held Mr. Gillin to the letter of his request.

The FOIA, 5 U.S.C. § 552(a)(3), creates an obligation to respond to a request which "reasonably describes" the records sought. We agree with the district court that, under the circumstances, Mr. Gillin's request

---

2. Since the IRS' evidentiary declarations show that it searched for transfer documents to the full extent dictated by the district court, we need make no independent evaluation of the adequacy of the search. *See Meeropol v. Meese,* 790

F.2d at 951 (where district court order set out scope of search needed, court evaluated search only "in terms of its compliance" with the order).

did not "reasonably describe" the records of the field examination.

There is evidence in the record to suggest that when Mr. Gillin first submitted the FOIA request, he had reason to believe that the IRS *had* found a deficiency as a result of its field examination. Several months earlier, the IRS had warned him that if he did not agree to extend the time for examining his 1985 taxes, the Service would have no choice but to issue a notice of deficiency forthwith. Mr. Gillin may have inferred from this statement that the IRS had already found a deficiency in his taxes. If that is what he believed, then he may—at that point—have seen no practical difference between asking for the documents used to "conclude there was a deficiency," and asking for the documents used in the course of the field examination.

But, within a week after Mr. Gillin made the FOIA application, the IRS informed him that it had *not* calculated a deficiency in his 1985 taxes. This news should have alerted Mr. Gillin to the flaw in his request. He should have recognized that the documents used in the field examination had *not* been "used as a basis to conclude there was a deficiency," and that consequently there was a discrepancy between what he actually said and what he meant to say. Since he, and not the IRS, was in a position to recognize and correct the ambiguity, we think it sensible that he bear the burden of clarification. There is nothing in the record, however, to indicate that Mr. Gillin tried to amend or clarify his request at any time during his administrative dealings with the IRS.[3]

5. *Documents in Criminal Investigation Division*—Mr. Gillin does not challenge the IRS' statement that it found no records pertaining to him in its criminal investigation division.

Finally, Mr. Gillin argues that the district court erred in proceeding to judg-ment without allowing him to conduct discovery. We can review this decision only for abuse of discretion, *see Meeropol v. Meese,* 790 F.2d at 960–61, and we find none here. Where the agency's affidavits are adequate to substantiate the adequacy and results of its search, and the validity of the exemptions it claims, then the "district judge has discretion to forgo discovery and award summary judgment on the basis of affidavits." *Goland v. Central Intelligence Agency,* 607 F.2d 339, 352 (D.C.Cir. 1978).

We have considered Mr. Gillin's other arguments and find them unpersuasive. Our decision renders moot the IRS' motion to strike Mr. Gillin's appendix.

*Affirmed.*

---

**3.** It is true that, during the course of this litigation, Mr. Gillin made it reasonably clear to all involved that he was now interested in obtaining the records of the field examination, whatever its outcome. His interrogatories and document productions requests, and his response to the IRS' dispositive motion, all express this de-sire. However, the clarification came too late to be relevant, since it amounted to an impermissible attempt to expand a FOIA request after the agency has responded and litigation has commenced. *See Irons v. Levi,* 451 F.Supp. 751, 753 (D.Mass.1978), *vacated on other grounds sub nom. Irons v. Bell,* 596 F.2d 468 (1st Cir.1979).