Douglas J. KNIGHT, Plaintiff,

v.

FOOD AND DRUG ADMINISTRATION,
Defendant.

No. 95–4097–SAC.

United States District Court,
D. Kansas.

Aug. 1, 1996.

Douglas J. Knight, Shawnee Mission, KS, pro se.

Mary K. Ramirez, Office of United States Attorney, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

CROW, District Judge.

This Freedom of Information Act ("FOIA") case comes before the court on the defendant Food and Drug Administration's ("FDA" 's) motion for summary judgment (Dk. 28), the plaintiff's motion to amend (Dk. 22), the plaintiff's request for leave to conduct discovery (Dk. 21) and the defendant's motion to stay discovery (Dk. 26). As the motions have been fully briefed, the court is ready to rule.

## BACKGROUND

The plaintiff Douglas J. Knight ("Knight"), pro se, is an inmate at the United States Penitentiary in Leavenworth, Kansas. The plaintiff admits in his complaint that he "was convicted in federal court in connection with a criminal case directly and indirectly relating to the PepsiCo extortion and tampering hoax that occurred in February and June of 1993." (Dk. 2). The plaintiff alleges he has requested the following:

1. copies of all records in FDA files referencing his name Douglas Knight, Doug Knight, Douglas J. Knight and Justin Knight;

2. copies of all records in FDA files referencing or containing information on the PepsiCo "Pepsi" tampering hoaxes and PepsiCo, Incorporated in general;

3. copies of all correspondence between the FDA and the PepsiCo Corporation; and

4. copies of all records in FDA files referencing "Grateful Friend."

(Dk. 2). The FDA moves for summary judgment arguing the action is moot, as it has fully disclosed all requested records.

Knight sent to the FDA a FOIA request dated December 14, 1994. This request sought:

any and all information your agency has records (as stated above) pertaining to Pepsico and/or Pepsi and the reported product tampering event that occurred in June, 1993. I specifically request all information in your files that reference *Pepsico Corporation and product tampering as well as all files referencing Pepsico Corporation and Douglas J. Knight or Justin Knight.*

(Dk. 29, App. A). Knight followed this request with a letter dated February 10, 1995, in which he noted that the FDA had not taken any action on his request within the time period permitted by the FOIA. (Dk. 30, Ex. B). Knight also asked that the FDA consider his letter to be an appeal from the implicit adverse action taken on his December 1994 request. (Dk. 30, Ex. B).

By letter dated April 11, 1995, Knight appealed his request, pursuant to 28 C.F.R. § 16.8, to the Office of Information and Privacy within the United States Department of Justice. (Dk. 29, App. B). Knight therein wrote:

Below I have listed the information I am requesting/appealing from the Food and Drug Administration in order to clarify any questions should they arise.

1.) Copies of all records referring to myself, Doug Knight, Douglas Knight, Douglas J. Knight, A.K.A. Justin Knight contained or referenced within FDA files.

2.) Copies of all records referencing the PepsiCo tampering Hoax, or Pepsico in general between January 1993 and the present. This was a large investigation and I wish to clarify that I do not want access to files on all the individuals investigated. I do request, however, a list of names of all the individuals investigated and the final results of each investigation.

3.) Copies of all correspondence between the FDA (and/or employees of the FDA) and the Pepsico Corporation. There should be several documents available under the FOIA.

4.) Any information referencing the name "Grateful Friend" in any of the FDA records.

In particular, I request copies of *all* files relating to myself, as well as all files referencing the Pepsico Corporation between January 1993 and the present.

(Dk. 29, App. B). The FDA's position is that this letter of April 1995 clarifies and modifies Knight's FOIA request of December 1994.

In June 19, 1995, the district court granted Knight leave to file his suit in forma pauperis. Knight alleges therein that he had exhausted his administrative remedies and had not received any response from the FDA to his different letters and requests. In its answer to Knight's complaint, the FDA admits it did not respond until June 27, 1995, to Knight's request of December 1994.

The FDA responded to Knight's FOIA request by letter dated June 27, 1995, which stated in material part:

In this request you had asked for a copy of all files, records, statements, intelligence materials, documents, memorandum transcripts of tape recordings, or any other information kept and maintained under your name. After reviewing your request, it was determined that the Food and Drug Administration, Office of Criminal Investigation (OCI), does not maintain any records or information concerning this part of your request.

You also sought any and all information pertaining to Pepsico and or Pepsi and the tampering event that occurred in June of 1993. You wanted all information that referenced Pepsico and product tampering and Pepsico and Douglas J. Knight or Justin Knight. Since your initial request, OCI became aware of your letter to the Office of Information and Privacy of the Department of Justice, dated April 11, 1995, narrowing the scope of you request (Attachment 2).

In this letter, you again requested all records maintained on yourself. As stated before, OCI does not have any records or

information that satisfy this part of your request. Also, you clarified that you do not want access to files on all the individuals investigated concerning the Pepsi tamperings, but do want a list of names of all of these individuals and the final results of each investigation. A list of all the individuals prosecuted and the results is being provided. (Attachment 3).

You also requested copies of all correspondence between FDA and Pepsico. OCI does not maintain a file or files concerning correspondence between FDA and Pepsico and thus does not have any records or information that satisfy this part of your request.

Finally, you requested information maintained by the FDA on "Grateful Friend". OCI does not have any records or information that satisfy this part of your request.

(Dk. 30, Ex. D). Knight sent to the FDA a letter dated July 5, 1995, saying that he was appealing the FDA's response and disputing that his request was as narrow as the FDA had construed it.

## FACTS [1]

In response to Knight's request in December of 1994, the FDA's Freedom of Information ("FOI") office caused the FDA's Office of Criminal Investigations ("OCI") to search for four categories of documents: (1) records referring to Doug Knight, Douglas Knight, Douglas J. Knight, a.k.a. Justin Knight; (2) a list of all individuals investigated in the Pepsico tampering matter and the final results of each investigation; (3) correspondence between FDA and the Pepsico Corporation pertaining to the Pepsico tampering matter; (4) information referencing the name "Grateful Friend" as a code name or pseudonym for some person connected with the Pepsico tampering matter. The FOI office chose OCI "to search because it was the component of the FDA responsible for carrying out investigations of potentially criminal violations, and all of the tampering investigations were potentially criminal matters." (Dk. 29, Decl. of Gerald H. Deighton at ¶ 6).

---

1. The facts are gleaned from the declaration of Gerald H. Deighton, the FOI officer for the FDA until March 31, 1996, and from the declaration

of Betty D. Dorsey, Deighton's replacement as FOI officer for the FDA.

On the first request, the OCI checked its general database in which it enters the names of all witnesses interviewed in investigations, all victims of tampering or other actions, and all subjects of investigations. This search did not yield any records. The OCI also contacted all of its offices by an electronic mail message asking the agents if they had records or information on Knight. One field officer reported that it had learned from the FBI that Knight was in prison as a result of an FBI investigation.

On the second request, the FDA construed this request as seeking a list of the names of all individuals investigated in the Pepsico tampering matter, and the results of each investigation. Deighton declares that OCI is the only component of the FDA "reasonably likely to have this information." OCI did not have such a list, and its database was not capable of generating a list of individual subjects and results. To generate such a list, OCI would have had to search manually the files on 209 investigations in this matter. The OCI did have a list of individuals prosecuted and the results or status of those cases, and it released this list to Knight. The FDA argues that it would not have released a list of all individuals investigated, as such matters are personal and private and shed no light on how the FDA performs its functions.

As to the third request, the FDA construed this request to be asking for correspondence between the FDA and Pepsico pertaining to the tampering matter. Searches were conducted in the OCI, the Office of the Associate Commissioner for Regulatory Affairs, and the Office of the Commissioner of the FDA. Independent of its 209 investigation files, the OCI did not have a file on Pepsico or on correspondence with Pepsico. OCI officials did not recall any specific correspondence in the 209 files. To check whether such correspondence did exist, the OCI searched a random sample of five files where the individual was convicted. No correspondence was found in those five files. The Associate Commissioner for Regulatory Affairs searched its computerized index covering all matters requiring a response or action from the Office of Regulatory Affairs. The search terms were "Pepsi," "Pepsico," or "Pepsi tampering," for the period between June 1, 1993, and through April 30, 1995. This search produced no requested documents. The Office of the Commissioner also searched its computerized index of correspondence to and from the Commissioner. Its search was for individuals affiliated with "Pepsico," and the search yielded two letters which were released to Knight. The Commissioner's officer also searched its optical disks of all incoming correspondence for the key words, "pepsi," "needle," and "tampering." This search yielded the same two letters.

The FDA construed the fourth request as seeking records referring to "Grateful Friend" as a code name or pseudonym for some person connected with the Pepsi tampering matter. The OCI, as the only component reasonably likely to have this information, searched its database and found no such reference. One field office reported that it had learned from the FBI that the plaintiff had claimed certain money in his bank account had come from a "Grateful Friend."

## SUMMARY JUDGMENT STANDARDS

A court grants a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure if a genuine issue of material fact does not exist and if the movant is entitled to judgment as a matter of law. The court is to determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The initial burden is with the movant to "point to those portions of the record that demonstrate an absence of a genuine issue of material fact given the relevant substantive law." *Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992). If this burden is met, the non-moving party must "come forward with specific facts showing that there is a genuine issue for trial as to elements essential to the non-moving party's case." *Martin v. Nannie and Newborns, Inc.*, 3 F.3d 1410, 1414 (10th Cir.1993)

(citations omitted). The court views the evidence and draws any possible inferences in the light most favorable to the non-moving party. *MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1117 (10th Cir.1991). A summary judgment motion does not empower a court to act as the jury and determine witness credibility, weigh the evidence, or choose between competing inferences. *Windon Third Oil and Gas v. Federal Deposit Ins.,* 805 F.2d 342, 346 (10th Cir.1986), *cert. denied,* 480 U.S. 947, 107 S.Ct. 1605, 94 L.Ed.2d 791 (1987).

## RELEVANT LAW

■ The FOIA was intended "to facilitate public access to Government documents." *United States Dep't of State v. Ray,* 502 U.S. 164, 173, 112 S.Ct. 541, 547, 116 L.Ed.2d 526 (1991). It " 'reflect[s] "a general philosophy of full agency disclosure[,]" ' " *John Doe Agency v. John Doe Corp.,* 493 U.S. 146, 152, 110 S.Ct. 471, 475, 107 L.Ed.2d 462 (1989) (quoting *Department of Air Force v. Rose,* 425 U.S. 352, 360–61, 96 S.Ct. at 1599, 48 L.Ed.2d 11 (1976)), to ' "ensure an informed citizenry, vital to the functioning of a democratic society." ' *F.B.I. v. Abramson,* 456 U.S. 615, 621, 102 S.Ct. 2054, 2059, 72 L.Ed.2d 376 (1982) (quoting *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 98 S.Ct. 2311, 57 L.Ed.2d 159 (1978))." *Manna v. United States Dept. of Justice,* 51 F.3d 1158, 1163 (3rd Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 477, 133 L.Ed.2d 405 (1995). "To achieve ... [these] goal[s], the FOIA is designed to ' "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." ' " *Anderson v. Department of Health and Human Services,* 907 F.2d 936, 941 (10th Cir.1990) (quoting *Wren v. Harris,* 675 F.2d 1144, 1145 (10th Cir.1982) (quoting in turn *Department of the Air Force v. Rose,* 425 U.S. at 361, 96 S.Ct. at 1599)). The public's access, however, is not " 'all-encompassing,' " for it is allowed " 'only to information that sheds light upon the government's performance of its duties.' " *Sheet Metal Workers Local No. 9 v. United States Air Force,* 63 F.3d 994, 996 (10th Cir.1995) (quoting *Hale v. United States Dep't of Justice,* 973 F.2d 894, 898 (10th

Cir.1992), *vacated on other grounds,* 509 U.S. 918, 113 S.Ct. 3029, 125 L.Ed.2d 717 (1993)).

■ The FOIA, in part, obligates an agency to make "promptly available" records that are "reasonably describe[d]" in a request. 5 U.S.C. § 552(a)(3). A district court reviews *de novo* an agency's decision on an FOIA request. 5 U.S.C. § 552(a)(4)(B); *Jones v. F.B.I.,* 41 F.3d 238, 242 (6th Cir.1994). "[T]he burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *John Doe,* 493 U.S. at 152, 110 S.Ct. at 475.

■ To prevail on summary judgment in an FOIA case where full disclosure is claimed, the agency " 'must demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.' " *Steinberg v. United States Dep't of Justice,* 23 F.3d 548, 551 (D.C.Cir.1994) (quoting *Weisberg v. United States Dep't of Justice,* 745 F.2d 1476, 1485 (D.C.Cir.1984)). The issue is not whether there might be more documents, *Kowalczyk v. Department of Justice,* 73 F.3d 386, 388 (D.C.Cir.1996), but whether the search was adequate, *Steinberg,* 23 F.3d at 551. " 'The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, non-conclusory affidavits submitted in good faith.' " *Steinberg,* 23 F.3d at 551 (quoting *Weisberg,* 745 F.2d at 1485.); *see Kowalczyk,* 73 F.3d at 388.

■ "To assess the adequacy of ... [an agency's] search, we must first ascertain the scope of the request itself." *Nation Magazine, Washington Bureau v. United States Customs Service,* 71 F.3d 885, 889 (D.C.Cir. 1995); *see Gillin v. I.R.S.,* 980 F.2d 819, 822 (1st Cir.1992) ("The adequacy of an agency's search 'is measured by the reasonableness of the effort in light of the specific request.' *Meeropol v. Meese,* 790 F.2d 942, 956 (D.C.Cir.1986)."). The requester must "reasonably describe[ ]" the records sought. 5 U.S.C. § 552(a)(3). "A request reasonably describes records if 'the agency is able to determine precisely what records are being requested.' " *Kowalczyk,* 73 F.3d at 388

(quoting *Yeager v. Drug Enforcement Administration,* 678 F.2d 315, 326 (D.C.Cir. 1982)). On the other hand, the "agency also has a duty to construe a FOIA request liberally." *Nation Magazine,* 71 F.3d at 890 (citations omitted).

■ In an FOIA case, the district court is not to grant summary judgment until it has an adequate factual basis upon which to render a decision. *Sheet Metal Workers,* 63 F.3d at 997. "To show reasonableness at the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate." *Nation Magazine,* 71 F.3d at 890 (citation omitted). In short, the agency's affidavits or declarations must establish "that the agency has conducted a thorough search." *Carney v. United States Dep't of Justice,* 19 F.3d 807, 812 (2nd Cir.), *cert. denied,* — U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *see Manna v. United States Dep't of Justice,* 51 F.3d at 1162–63. "The affidavits must be 'reasonably detailed ..., setting forth the search terms and type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched.'" *Nation Magazine,* 71 F.3d at 890 (quoting *Oglesby v. United States Dep't of Army,* 920 F.2d 57, 68 (D.C.Cir.1990)). The court may also rely on affidavits that explain "'why a more thorough investigation would have been unduly burdensome.'" *Kowalczyk,* 73 F.3d at 388 (quoting *McGehee v. C.I.A.,* 697 F.2d 1095, 1102 (D.C.Cir.1983)). "Conclusory statements that the agency has reviewed relevant files are insufficient to support summary judgment." *Nation Magazine,* 71 F.3d at 890 (citation omitted). "'If, ..., the record leaves substantial doubt as to the sufficiency of the search, summary judgment for the agency is not proper.'" *Kowalczyk,* 73 F.3d at 388 (quoting *Truitt v. Department of State,* 897 F.2d 540, 542 (D.C.Cir.1990)).

■ An agency's affidavits or declarations are "'accorded a presumption of good faith.'" *Carney,* 19 F.3d at 812 (quoting *SafeCard Services, Inc. v. S.E.C.,* 926 F.2d

1197, 1200 (D.C.Cir.1991)). Consequently, discovery on the agency's search "generally is unnecessary if the agency's submissions are adequate on their face." *Id.*

■ Deighton's declaration is sufficient to show that the FDA conducted a search reasonably calculated to uncover all documents relevant to Knight's first, third and fourth requests. The declaration is detailed and non-conclusory. It sets forth both the search terms used and the type of search performed. It further states that the OCI was the only component within the FDA reasonably likely to have the requested information. Deighton explains that the OCI is responsible for investigations of possible criminal matters and all tampering investigations are treated as possible criminal matters.

■ Knight complains that the FDA primarily limited its searches to the OCI and only searched other record systems with respect to his request for correspondence. Knight argues that the FDA should be required to explain all of its record systems in detail so that the court can be assured that the FDA searched all systems where the requested documents were reasonably likely to be found. "There is no requirement that an agency search every record system." *Oglesby,* 920 F.2d at 68 (citations omitted). This is particularly true when the request does not specifically state the place of search. *See Marks v. United States Dep't of Justice,* 578 F.2d 261, 263 (9th Cir.1978). The FDA here met its minimum obligation by stating that no other component's record system was reasonably likely to have responsive documents. *See Oglesby,* 920 F.2d at 68. Since the FDA reasonably construed Knight's first, third and fourth requests,[2] this declaration establishes adequate searches for those requested documents. *See Nation Magazine,* 71 F.3d at 891.

In Deighton's declaration, the FDA has set out in detailed and non-conclusory terms the steps that were taken to search for the requested documents. Consequently, it is in-

---

**2.** In *Nation Magazine,* the court was critical of the agency's failure to describe the different record systems only because the agency had construed the scope of the request too narrowly. 71 F.3d at 891.

cumbent on Knight to raise a genuine issue of material fact concerning the FDA's search on his first, third and fourth requests. Knight does not contradict the FDA's account of the search procedure used nor does he present evidence of the FDA's bad faith. *See Miller v. United States Dept. of State,* 779 F.2d 1378, 1384 (8th Cir.1985). Consequently, the FDA is entitled to a partial summary judgment in that it conducted a search reasonably calculated to uncover all documents relevant to Knight's first, third and fourth requests.

■ Knight's complaint with the FDA response to his second request is well taken. Rather than construing Knight's second request liberally, which was its duty, the FDA chose to read Knight's letter of April of 1995 as a clarification that limited his second request to a mere list of all individuals investigated in the Pepsico tampering matter and the results of each investigation. Granted, Knight's second request is not a model of clarity, but it is sufficient to alert the FDA that he wanted more than a list of individuals investigated. *See Nation Magazine,* 71 F.3d at 890. The court believes the fairer reading of Knight's second request after the April 1995 letter is that he wants all FDA records between January 1, 1993, and April 30, 1995, which refer to either Pepsico or the Pepsico tampering matter and that, as for the individual investigation files searched in response to his request, he does not request access to these files but only wants a list of those individuals investigated and the final results of each investigation.

Knight does not take issue with the manner in which the FDA searched the OCI's individual investigation files and the list produced in response to his request. Rather, Knight argues that the FDA has not shown that it searched all of its record systems where documents referencing either Pepsico or the Pepsico tampering matter are reasonably likely to be found. Deighton's declaration does not state whether any such searches were conducted or which FDA components or record systems would be reasonably likely to have such requested records. Without this factual foundation, the FDA is not entitled to summary judgment concerning Knight's second request.

**PLAINTIFF'S MOTION TO AMEND (Dk. 22).**

■ The court denies this motion for two reasons. First, the motion does not comply with D.Kan. Rule 15.1. Second, the plaintiff seeks merely to add specific arguments addressing the manner in which the defendant has construed his second request. Such arguments are fairly encompassed in his general claim that the FDA has not complied with the FOIA.

**PLAINTIFF'S REQUEST FOR LEAVE TO CONDUCT DISCOVERY (Dk. 21) and DEFENDANT'S MOTION TO STAY DISCOVERY (Dk. 26).**

The court grants the defendant's motion to stay discovery for thirty days from the date of this ruling. At the end of the thirty days, absent any interim rulings, the court will reconsider the plaintiff's request for leave to conduct discovery.

IT IS THEREFORE ORDERED that the defendant's motion for summary judgment (Dk. 28) is granted in part and denied in part;

IT IS FURTHER ORDERED that the plaintiff's motion to amend (Dk. 22) is denied;

IT IS FURTHER ORDERED that the plaintiff's request for leave to conduct discovery (Dk. 21) is denied and the defendant's motion to stay discovery (Dk. 26) is granted for thirty days from the filing date of this order.