John L. WHITEHOUSE

v.

U.S. DEPARTMENT OF LABOR.

No. CIV.A. 97–10317–RGS.

United States District Court,
D. Massachusetts.

March 9, 1998.

## MEMORANDUM AND ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

STEARNS, District Judge.

John L. Whitehouse is an attorney who represents Federal Employees' Compensation Act ("FECA") claimants before the Office of Workers' Compensation Programs ("OWCP") of the Department of Labor ("DOL").[1] Whitehouse brought this lawsuit under the Freedom of Information Act ("FOIA") seeking records of compensation paid by OWCP to Dr. J. Peter Strang and a practice group with which he is affiliated, the University Disability Consortium ("UDC"). Whitehouse also seeks copies of the medical evaluations of FECA claimants performed for OWCP by Dr. Strang and UDC from January 1, 1993 to the present. DOL has produced the payment records, but refuses to produce the medical evaluations, claiming that they are covered by the privacy exemption of FOIA. Whitehouse contends that by redacting each patient's name, address, and social security number, OWCP can adequately protect the patient's privacy. Whitehouse seeks a declaratory judgment and injunctive relief in the form of an order compelling DOL to produce the redacted medical evaluations.

### FACTS

On December 4, 1996, Whitehouse made a FOIA request to the Boston OWCP seeking (1) documents evidencing DOL payments to J. Peter Strang, M.D., and the UDC, from January 1, 1993, to December 4, 1996, and (2) copies of the reports of all medical evaluations of FECA claimants performed by Dr. Strang and UDC for OWCP during the same period.[2] On April 29, 1997, OWCP provided the payment records, but refused to produce the medical evaluations.

OWCP's computer-formatted payment records are accessible only by means of a medical provider's numerical identifier. The numerical identifiers are either the provider's social security number (SSN) or employer identification number (EIN). Medical evaluations are kept in paper files, which are maintained under an OWCP claim file number, and are cross-referenced by the name of the claimant.

Dennis Mankin, an OWCP employee assigned to respond to Whitehouse's request, directed that a search be made for payment records bearing Dr. Strang's and UDC's EIN and SSN numbers. The records thus retrieved were turned over to Whitehouse.[3] When Whitehouse indicated that he believed that the response was incomplete, the data base was queried a second time. No addi-

---

1. Before beginning his law practice, Whitehouse served as a claims examiner for the OWCP.

2. FECA provides compensation to federal civilian employees who are injured or disabled in the course of their employment. Employee claims filed under FECA are processed and adjudicated by the OWCP. See 20 C.F.R. §§ 10.102 and 10.130. The OWCP is authorized to order a claimant to undergo a "second opinion" examination by a designated physician. In the event of a conflict between a claimant's treating physician and the "second opinion" doctor, the claimant may be directed to undergo a referee examination by an "impartial" third physician. 20 C.F.R. §§ 10.407–10.408. Dr. Strang and the UDC are among the contractors who provide second opinions and impartial medical examinations to the OWCP. Mankin Decl. ¶ 5.

3. Before the payment records were given to Whitehouse, the identifying numbers and all references to individual claims were redacted.

tional records were found.[4] The medical evaluations were not disclosed by OWCP on grounds that they are exempted by FOIA from disclosure.

A medical evaluation contains a lengthy summary of the patient's medical history (including descriptions of family history, past surgeries, health complications, smoking habits, alcohol consumption, sexual dysfunctions, and psychiatric and psychological treatment); a history of the injury that is the subject of the examination; a description of the examination itself; and a diagnosis and prognosis.

At the request of the U.S. Attorney's Office, OWCP randomly selected four of the hundreds of medical evaluations at issue. These were submitted to the court for *in camera* inspection.[5]

## DISCUSSION

█ Summary judgment is granted when, based upon the pleadings, affidavits, and depositions, "there is no genuine issue as to any material fact, and [where] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Gaskell v. Harvard Coop. Society,* 3 F.3d 495, 497 (1st. Cir.1993). A dispute of fact is only genuine if there is sufficient evidence to permit a reasonable jury to resolve the point in the nonmoving party's favor. *NASCO, Inc. v. Public Storage, Inc.,* 29 F.3d 28, 32 (1st Cir.1994). While all reasonable inferences must be indulged in favor of the non-moving party, *Oliver v. Digital Equipment Corp.,* 846 F.2d 103, 105 (1st Cir.1988), a fact is considered material only when it has the "potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). To be entitled to summary judgment in a FOIA

suit, a respondent government agency must show that it has discharged its obligations under FOIA, that is, that it conducted a search reasonably calculated to locate all relevant documents, produced the requested information, or properly invoked an exemption. *Church of Scientology International v. U.S. Dept. of Justice,* 30 F.3d 224, 229–230 (1st Cir.1994); *Maynard v. Central Intelligence Agency,* 986 F.2d 547, 559 (1st Cir.1993); *Gillin v. Internal Revenue Service,* 980 F.2d 819, 821 (1st Cir.1992).

█ As justification for its refusal to produce the medical evaluations, DOL relies on FOIA's exemption 6. FOIA "does not apply to matters that are ... personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of privacy." 5 U.S.C. § 552(b)(6). When the privacy exemption is claimed, a reviewing court must weigh two compelling and competing interests, the individual's right to privacy and the public's right to government information. *Dept. of Air Force v. Rose,* 425 U.S. 352, 370–382, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976).

█ When individual privacy is implicated by a FOIA request, the requesting party bears the burden of demonstrating that disclosure of a government record is in the public interest.[6] *Carter v. U.S. Dept. of Commerce,* 830 F.2d 388, 390 n. 8, 391 n. 13 (D.C.Cir.1987). Whitehouse states that in his experience as a FECA claims examiner, Dr. Strang's and UDC's medical opinions were always unfavorable to the claimant.[7] Whitehouse Aff. ¶ 7. Whitehouse argues that the public interest will be served if he can identify a pattern of anti-claimant bias in Dr. Strang's and UDC's supposedly impartial evaluations.[8]

---

**4.** Although Whitehouse's Amended Complaint renews the request for payment records, Whitehouse stated at the hearing that he is satisfied with DOL's response in this regard.

**5.** Mankin attests that the randomly selected reports are fairly representative of the whole.

**6.** Whitehouse also argues that the records should be released because they are in the public domain in the form of opinions published by the Employees Compensation Appeals Board ("ECAB"). However, fewer than one percent of

OWCP's cases are appealed to the ECAB, Makin Decl., ¶ 16, and fewer still result in published decisions.

**7.** I have reviewed the four medical evaluations submitted by DOL. Three of the evaluations support the claimant's assertion of disability, one does not.

**8.** While it might be suspected that Whitehouse is motivated by private advantage in establishing such a bias, the motivation of the requestor is

Because FOIA incorporates a strong presumption favoring disclosure, a government agency must produce "any reasonably segregable portion of a of a record ... after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b)(9). Whitehouse argues that DOL can redact patient identifying information from the evaluations, thereby protecting the claimant's privacy. DOL contends that there is no effective way to sanitize the evaluations.

Each medical evaluation report contains numerous references that would directly or indirectly allow the subject of the report to be identified by a knowledgeable reader. Aside from information which directly identifies the claimant, there is information dispersed throughout each report which is personal and unique in nature. In this respect, the exempt information is so interwoven with any non-exempt information that redaction would be impracticable and would not produce meaningful information. Since the source of the information is already known, a reader would know that the claimant is or was a federal employee who made a FECA claim. This, when combined with the unique personal information in a report, would enable at least some knowledgeable persons to identify the subject of the report.

[The alternative,] requiring the OWCP to redact any non-exempt information, would impose a heavy burden on OWCP. Because the reports contain so much highly personal information, the inadvertent release of such information would have potentially egregious consequences for the individual involved; this fact would make any redaction exceedingly difficult and time consuming. Each report would have to be read and analyzed by a person having the sensitivity and judgment required for dealing with such highly private information. The work involved in such a task would have a substantial adverse affect on the OWCP's ability to process FECA claims for at least a month.

Defendant's Statement of Facts, at ¶¶ 18–19. See also Mankin Decl., ¶¶ 21–22.

### CONCLUSION

I do not doubt that the public interest would be served in some degree if Whitehouse was able to establish that the independent evaluations of FECA claimants performed by Dr. Strang and UDC were biased (assuming that such could be determined from the records). The allegations against Dr. Strang and UDC, however, are less than compelling, based as they are on the anecdotal recollections of the requestor. As against this attenuated prospect of a public good, one must weigh the overriding interest FECA patients have in preserving the confidentiality of their intimate medical records. The intrusion on patient privacy that would result from disclosure is a near certainty, as I agree with DOL that there is no practical way to redact the reports to effectively eliminate potentially identifying patient information. If Dr. Strang and the UDC doctors are indeed biased, that is a concern that must be left to the cross-examiner's skill.

### ORDER

Because I conclude that the public interest in disclosure is outweighed by the claimants' right to privacy, the Department of Labor's Motion for Summary Judgment is *ALLOWED*.

SO ORDERED.

---

irrelevant to the court's determination. "[W]hether an invasion of privacy is *warranted* cannot turn on the purposes for which the request is made.... [T]he identity of the requesting

party has no bearing on the merits of his or her FOIA request." *U.S. Dept. of Justice v. Reporters Committee*, 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (emphasis in original).