*678 GRIFFITH, Circuit Judge:
In this appeal, we are asked to decide whether the government may deny a criminal defendant’s request under the Freedom of Information Act for records related to his case on the ground that he waived his right to seek that information as part of a plea agreement. In this case the answer is no, because the government has failed to identify any legitimate criminal-justice interest served by the waiver.
I
In March 2007, William Price pled guilty in the Western District of Missouri to two offenses involving production and receipt of child pornography.[1] In exchange for a favorable sentencing recommendation from the government, Price entered into a plea agreement that included a waiver of his rights under FOIA to records connected to his case.[2] He was sentenced to fifty years’ imprisonment and is currently incarcerated.
In October 2011, Price submitted a FOIA request to the FBI for all records pertaining to his ex-wife, accompanied by a privacy waiver she had signed. The FBI denied his request, claiming that the records Price sought related to his case and that he had waived his right to them. In May 2014, Price challenged the denial in a pro se suit in district court, arguing that FOIA rights cannot be waived. In the alternative, he argued that the waiver did not cover all of the records he sought. In August 2014, the district court granted the government summary judgment, concluding that the FBI had lawfully denied Price’s requests. According to the district court, it would be anomalous to forbid the waiver of a statutory right under FOIA when the Supreme Court has allowed the waiver of important constitutional rights. The district court did not address Price’s argument that some of the information he requested was not covered by his waiver. Price timely filed a notice of appeal from the district court’s order, and we have jurisdiction pursuant to 28 U.S.C. § 1291.[3] We review de novo a district court’s “decision granting summary judgment to an agency claiming to have complied with” its obligations under FOIA. Schrecker v. U.S. Dep’t of Justice, 349 F.3d 657, 661-62 (D.C. Cir. 2003).
The government argues that this suit is an attempt by Price to challenge his conviction or sentence that turns on whether his waiver was knowing, voluntary, and *679 intelligent. We see it differently. This is a FOIA suit in which we are asked to determine de novo whether the FBI lawfully withheld records that Price requested.
II
In general, “[cjriminal defendants may waive both constitutional and statutory rights, provided they do so voluntarily and with knowledge of the nature and consequences of the waiver.” United States v. Mabry, 536 F.3d 231, 236 (3d Cir. 2008) (citations omitted); accord United States v. Guillen, 561 F.3d 527, 530 (D.C. Cir. 2009); see also United States v. Ruiz, 536 U.S. 622, 629-30, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002) (“A defendant, for example, may waive his right to remain silent, his right to a jury trial, or his right to counsel .... ”). Amicus contends that the district court should have declined to enforce the waiver, first because FOIA rights are never waivable, and, in the alternative, because waivers of FOIA rights in plea agreements contravene public policy.[4]
A
Amicus argues primarily that no person may ever waive his right to seek records under FOIA. Statutory rights are generally waivable unless Congress affirmatively provides they are not, see United States v. Mezzanatto, 513 U.S. 196, 200-01, 115 S.Ct. 797, 130 L.Ed.2d 697 (1995), and amicus suggests two ways in which Congress has shown that FOIA rights may not be waived. First, Price observes that FOIA requires the disclosure of all records except those specifically exempted from its coverage. As amicus notes, these exemptions are “explicitly made exclusive.” Dep’t of Air Force v. Rose, 425 U.S. 352, 361, 96 S.Ct. 1592, 48 L.Ed.2d 11 (1976); see also 5 U.S.C. § 552(d) (FOIA “does not authorize withholding of information or limit the availability of records to the public except as specifically stated in this section”). There are nine categories of records exempted from disclosure, including, for example, records that are classified pursuant to Executive Order, relate solely to internal agency policies or procedures, are specifically exempted from disclosure by other statutes, or would constitute an unwarranted invasion of personal privacy if disclosed. See id.
As amicus sees it, a waiver of FOIA rights would “operate[ ] as a tenth exemption,” and would therefore be unenforceable, “because Congress expressly prohibited agencies from creating additional FOIA exemptions.” Amicus Br. 9-10. We disagree. Such a waiver does not function as a tenth FOIA exemption. Amicus confuses the question of whether an exemption keeps a document out of the public’s reach with the question presented here: whether a particular person may access that document. But an individual’s waiver of his FOIA rights does not limit the public’s right to the document.
*680 To understand why, consider that when FOIA “does not apply” to a category of documents, 5 U.S.C. § 552(b), those records are exempt from all public disclosure. See DiBacco v. U.S. Army, 795 F.3d 178, 183 (D.C. Cir. 2015). The agency is under no obligation to turn over those documents—to anybody. Things are altogether different when an agency denies someone a document he has promised not to seek. In that circumstance, the agency is not saying that FOIA “does not apply” to the document. Indeed, the document is still subject to FOIA and remains available to other requesters—just not to the person who waived his right to it. That result is perfectly compatible with the text of FOIA, which requires the agency to invoke one of the nine exemptions if it wishes to place records off limits to “the public.” 5 U.S.C. § 552(d) (emphasis added). In short, Congress restricted agencies’ ability to remove books from the library, but said nothing about an individual’s freedom to give up his library card, if he so chooses.
Next, amicus argues that the intent of Congress to protect FOIA rights from waiver is inherent in the “ ‘fundamental principle’ ... [that] ‘the identity of the requesting party has no bearing on the merits of his or her FOIA request.’ ” Ami-cus Reply Br. 8 (quoting Roth v. U.S. Dep’t of Justice, 642 F.3d 1161, 1183 (D.C. Cir. 2011)) (discussing FOIA’s command that records be made promptly available “to any person” who requests them, 5 U.S.C. § 552(a)(3)(A)). Although the identity of a requester is generally irrelevant to whether an exemption applies, see U.S. Dep’t of Justice v. Reporters Comm, for Freedom of Press, 489 U.S. 749, 771, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (explaining that the government may not deny a person’s FOIA request on the ground that he lacks a special interest in the records sought), this case is not about whether a document can be denied under one of the exemptions; it is simply about whether an agency, as a general matter, may decline to turn over records to somebody who has specifically contracted with the government not to seek them. Nowhere in the statute has Congress forbidden that practice.
One additional point: amicus contends that FOIA rights cannot be waived in the same way that a person cannot give away his rights to a minimum wage or overtime pay under the Fair Labor Standards Act. That analogy is misplaced. Minimum-wage and maximum-hour laws operate by limiting freedom to contract, see W. Coast Hotel Co. v. Parrish, 300 U.S. 379, 391-92, 57 S.Ct. 578, 81 L.Ed. 703 (1937), so it is easy to see how the statutory scheme could be frustrated by allowing workers and management to contract around those laws. Indeed, the entire point pf such laws is to stave off low salaries and wages that some people would accept if given the choice. By contrast, allowing individuals to contract away their personal right to information under FOIA does not jeopardize the statutory scheme. The statute’s “sole concern is with what must be made public or not made public.” Reporters Comm., 489 U.S. at 772, 109 S.Ct. 1468 (quoting Kenneth Culp Davis, The Information Act: A Preliminary Analysis, 34 U. Chi. L. Rev. 761, 765 (1967)); see also North v. Walsh, 881 F.2d 1088, 1096 (D.C. Cir. 1989). And here, as both Price and the government acknowledge, almost any other person could get the same records Price has requested—just not Price himself. The records he seeks remain readily available to the public, assuming they are not subject to an exemption.
The implications of Price’s argument underscore its weakness. Under his view, FOIA claims would become practically impossible to settle. Suppose the FBI denies *681 a person’s request for documents, and the person sues under FOIA. Because litigation is uncertain and costly, settlement talks ensue. The FBI offers to give him document X while continuing to withhold from him documents Y and Z. The requester accepts the FBI’s offer and voluntarily dismisses his suit. But a month later, buyer’s remorse sets in and he asks the FBI for documents Y and Z. Presumably, the FBI would deny his request on the ground that, just last month, he signed on to a settlement in which he agreed not to receive those documents. If Price were correct that the FBI would be barred from denying his request unless it could invoke one of the statutory exemptions, the promise made in the settlement would be meaningless. If that were the law, the agency would never have settled with him to begin with. Indeed, the agency would never settle with anybody. FOIA settlements would always be—from the government’s perspective—meaningless. That outcome is absurd. FOIA cases settle all the time, and accepting Price’s argument would put an end to that longstanding practice. We decline to take the bait.
B
 More fundamentally, in responding to Price’s public-policy-based challenge, the government has not pointed us to any legitimate criminal-justice interest served by including a waiver of FOIA rights in Price’s plea agreement. Amicus argues, and all parties agree, that a “prosecutor is permitted to consider only legitimate criminal justice concerns in striking [a plea] bargain—concerns such as rehabilitation, allocation of criminal justice resources, the strength of the evidence against the defendant, and the extent of [a defendant’s] cooperation with the authorities,” Town of Newton v. Rumery, 480 U.S. 386, 401, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987) (O’Connor, J., concurring); see also id. at 397, 107 S.Ct. 1187 (majority opinion) (evaluating the degree to which an agreement in the criminal context “further[ed] legitimate prosecutorial and public interests”). This set of legitimate interests places boundaries on the rights that can be bargained away in plea negotiations.
For example, waivers of appeal rights are permissible, in part, because they promote finality: the prosecution avoids expending time and resources putting the matter to rest. See, e.g., United States v. Teeter, 257 F.3d 14, 22 & n.5 (1st Cir. 2001). Similarly, when a criminal defendant waives his right to a trial, prosecutors save the time and resources typically involved in obtaining a conviction. And when a criminal defendant waives his right to impeachment evidence under Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), prosecutors can secure guilty pleas without prematurely disclosing witness information and trial strategy. Ruiz, 536 U.S. at 631-32, 122 S.Ct. 2450. A criminal defendant can even agree to give up his right to pursue a section 1983 damages action in exchange for dropping a prosecution, as long as the prosecutor has “an independent, legitimate reason ... directly related to his prosecu-torial responsibilities” for seeking such an agreement—for instance, sparing a victim “the public scrutiny and embarrassment she would have endured” as a key witness if the case had gone forward. Rumery, 480 U.S. at 398, 107. S.Ct. 1187.
Here, however, the government has not pointed us to any legitimate criminal-justice interest served by allowing for FOIA waivers in plea agreements. Indeed, all the government says is that “the public interest in the efficient and effective prosecution and conviction of sex offenders ... is considerable and outweighs whatever pub- *682 lie interest may exist in the [contents of the] investigation and prosecution files of [a] single defendant.” Appellee Br. 36. But how? Certainly litigating FOIA disputes in court can be burdensome for the parties involved, as the government notes, see id. at 46, but in what way do FOIA waivers actually support “efficient and effective prosecution”? The government leaves us to guess.
When pressed at oral argument about what legitimate criminal-justice purpose FOIA waivers might serve, the government simply responded: “Prisoners frankly have a lot of time on their hands and they write a lot of FOIA requests, and it is a burden to agencies especially like the FBI ....” Oral Arg. Rec. at 16:43-17:00. But the government did not clearly make this argument in its brief, despite amicus having called into question the weight of interests served by enforcing FOIA waivers in plea agreements.
True, in another point gone missing from the government’s brief and raised by its counsel only at oral argument, FOIA waivers may occasionally promote the government’s legitimate interest in finality. But as best we can tell, FOIA waivers promote finality only by making it more difficult for criminal defendants to uncover exculpatory information or material showing that their counsel provided ineffective assistance. That argument takes the finality interest too far. After all, a defendant can never waive his right to bring a color-able claim of ineffective assistance of counsel, even though such claims undermine finality. See Guillen, 561 F.3d at 530 (holding that plea waivers are unenforceable “insofar as the defendant makes a color-able claim he received ineffective assistance of counsel in agreeing to the waiver”); see also Washington v. Lampert, 422 F.3d 864, 869 (9th Cir. 2005) (noting that “other circuits have barred waivers of [ineffective assistance of counsel] claims associated with the negotiation of plea agreements”). Some courts have even suggested that the right to material exculpatory information under Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), also cannot be waived. See, e.g., McCann v. Mangialardi, 337 F.3d 782, 787-88 (7th Cir. 2003).
And as amicus observes, FOIA plays a significant role in uncovering undisclosed Brady material and evidence of ineffective assistance of counsel, see Amicus Br. 27, and in practice has led to uncovering records relevant to ineffective-assistance-of-counsel claims, such as plea offers not communicated by defense counsel to clients, see Hare v. United States, 688 F.3d 878, 880 (7th Cir. 2012); Albillo-De Leon v. Gonzales, 410 F.3d 1090, 1100 (9th Cir. 2005), as well as evidence of Brady violations, see Monroe v. Angelone, 323 F.3d 286, 294 (4th Cir. 2003); Bagley v. Lumpkin, 798 F.2d 1297, 1299 (9th Cir. 1986); United States v. McDavid, No. 06-cr-0035, ECF No. 442 (E.D. Cal. July 14, 2014) (describing Brady materials obtained through FOIA that led to the release of a man sentenced to 19.5 years’ imprisonment); Ex parte Miles, 359 S.W.3d 647 (Tex.Ct.Crim.App.2012) (vacating the conviction of a man sentenced to sixty years’ imprisonment after a FOIA request uncovered suppressed police reports and evidence that another person confessed to the crime); see also Timothy Howard, National Registry of Exonerations, http://www. law.umich.edu/special/exoneration/Pages/ casedetail.aspx?caseid=3311 (last visited July 25, 2017) (describing suppressed evidence uncovered through FOIA that led to the exoneration of two men who had spent decades on death row). FOIA thus provides an important vehicle for vindicating significant rights—and for keeping prosecutors honest. Indeed, in some cases it provides the only vehicle. And the govern *683 ment, at least in this case, has not told or shown us how taking that tool away from criminal defendants serves the interests of justice compared to the harms those waivers cause.
In the dissent’s view, our inquiry is unnecessary because “achieving a guilty plea is the legitimate criminal justice interest” served by the waiver of any right that helps to secure the plea in the first place. Dissenting Op. at 687-88 (emphasis added); see also id. at 688 (reasoning that “no ‘legitimate criminal-justice’ interest need be satisfied beyond securing a knowing, voluntary, and intelligent admission of guilt”). But that principle would allow for the waiver of any right as part of a plea agreement. For instance, it would allow prosecutors to ask a criminal defendant to waive his right to collect social security benefits. Surely, though, we would decline to enforce that waiver, based on the rule that a prosecutor must have legitimate criminal-justice interests in mind when negotiating the terms of a plea agreement.
At the end of the day, a plea agreement that attempts to waive a right conferred by a federal statute is, like any other contract, “unenforceable if the interest in its enforcement is outweighed [under] the circumstances by a public policy harmed by enforcement.” Rumery, 480 U.S. at 392, 107 S.Ct. 1187 (citing RESTATEMENT (SECOND) OF CONTRACTS § 178(1) (1981)). More specifically, the Supreme Court has instructed us to consider whether agreements with prosecutors “further legitimate prosecutorial and public interests” before enforcing those agreements. Id. at 397, 107 S.Ct. 1187. And while “[t]he mere potential for abuse of prosecutorial bargaining power” does not on its own invalidate waivers of defendants’ rights, Mezzanatto, 513 U.S. at 210, 115 S.Ct. 797, this uneven power dynamic lurks in the background in cases like these and calls for a careful consideration of Price’s claim. Here Price has shown, through real-world examples, that enforcing a FOIA waiver would make it harder for litigants in his position to discover potentially exculpatory information or material supporting an ineffective-assistance-of-counsel claim. This is especially true given that, “with rare exceptions, only the wai-vor” in such cases “has the requisite knowledge and interest to lodge a FOIA request in the first place.” Amicus Br. 27. On the other side of the scale, the government has offered us nothing more than the unsupported blanket assertion that FOIA waivers assist in effective and efficient prosecution, without any support or explanation how. Under these particular circumstances, and based on the briefing in this case, we have little trouble in concluding that the public interest in enforcing Price’s waiver is outweighed by the harm to public policy that enforcement would cause.
The dissent, by contrast, views this as a case about the voluntariness of Price’s waiver and would enforce the waiver because it was voluntary. But the fact that Price freely chose to waive his FOIA rights is not at issue here. The question is simply whether Price’s agreement to waive his FOIA rights offends public policy and is therefore unenforceable. In answering that question, we decline to do the government’s work for it and supply an argument the government did not make. To be clear, we do not hold that FOIA waivers in plea agreements are always unenforceable. We simply hold that the government may not invoke Price’s FOIA waiver as a basis for denying him access to the records he requests because, in this ease, the government has given us no adequate rationale for enforcing this waiver in light of the public-policy harms Price has identified. That’s it.
*684 Because we hold that the district court should have declined to enforce Price’s FOIA waiver on public-policy grounds, we do not address Price’s alternative argument that some of the records he requested fell outside the scope of his waiver. We express no view as to whether Price’s FOIA request was otherwise properly made or whether any of FOIA’s nine categorical exemptions applies to the records he requested.
IV
For the foregoing reasons, we reverse the order of the district court and remand for further proceedings consistent with this opinion.

So ordered.

Dissenting opinion filed by Circuit Judge BROWN.

. Price was convicted under 18 U.S.C. § 2251(a), which prohibits knowingly attempting to induce a minor to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, and 18 U.S.C. § 2252(a)(2), which prohibits knowingly receiving visual depictions of minors engaged in sexual conduct.

. Specifically, Price agreed to
waive[ ] all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.
J.A. 138.
FOIA waivers in plea agreements are neither common nor completely unheard of. A recent study of the various kinds of waivers included in plea agreements found that, in 2009, 25% of robbery plea agreements and 23% of arson plea agreements contained a FOIA waiver. See Susan R. Klein et al., Waiving the Criminal Justice System: An Empirical and Constitutional Analysis, 52 AM. Crim. L. Rev. 73, 87 (2015).

.Price is not represented by counsel on appeal, and he has not filed any briefs himself. Rather, we appointed an amicus—the Georgetown Appellate Litigation Program—to brief and argue his cause before us.

. We note that the district courts to have considered the question have held that FOIA waivers in plea agreements are enforceable. See, e.g., Caston v. Exec. Office for U.S. Att'ys, 572 F.Supp.2d 125, 129 (D.D.C. 2008); Boyce v. United States, Civ. No. 1:08-cv-535, 2010 WL 2691609, at *1 (W.D.N.C. July 6, 2010); Patterson v. FBI, Civ. No. 3:08-cv-186, 2008 WL 2597656, at *2 (E.D. Va. June 27, 2008). And the Fourth Circuit, in an unpublished opinion, once referred to a plea agreement that contained a FOIA waiver as “valid and binding.” United States v. Lucas, 141 Fed.Appx. 169, 170 (4th Cir. 2005). Those courts, however, did not address the questions posed here: whether FOIA rights are inherently un-waivable for everyone or, alternatively, whether public-policy concerns ever require courts to refrain from enforcing FOIA waivers contained in plea agreements. We now try our hand qt answering those questions.