Jabar v. U.S. Department of Justice

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2022
No. 22-226

STEVE SATAR JABAR,
*Plaintiff-Appellant,*

*v.*

UNITED STATES DEPARTMENT OF JUSTICE,
*Defendant-Appellee.*

On Appeal from a Judgment of the United States District Court for
the Western District of New York.

SUBMITTED: JANUARY 23, 2023
DECIDED: FEBRUARY 23, 2023

Before: CABRANES and NARDINI, *Circuit Judges*, and RAKOFF, *District Judge.*[*]

---

[*] Judge Jed S. Rakoff, of the United States District Court for the Southern District of New York, sitting by designation.

Plaintiff-Appellant Steve Satar Jabar appeals from a decision by the United States District Court for the Western District of New York (John Sinatra, Jr., *J.*) granting summary judgment to the United States Department of Justice. Jabar sued the Department of Justice under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking documents from the Federal Bureau of Investigation related to himself, speculating that they might include exculpatory information that the government had not disclosed in his recent criminal trial. The government produced 21 sets of responsive documents and an index detailing FOIA exemptions under which it withheld other responsive documents, and the district court granted summary judgment for the government. On appeal, Jabar argues (1) that summary judgment was improperly granted because his FOIA action is an effort to vindicate his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) that, in the alternative, the district court erred in not conducting an *in camera* inspection of withheld documents. We hold otherwise. As we explained in *Brown v. Federal Bureau of Investigation*, 658 F.2d 71, 76 (2d Cir. 1981), FOIA and the criminal discovery process provide distinct tracks for seeking disclosure from the government. That a FOIA action might lead to the discovery of documents useful to a particular criminal defendant changes neither the government's statutorily defined obligations under FOIA, nor the government's burden at summary judgment. We therefore AFFIRM the district court.

---

Michael Kuzma, Law Office of Michael Kuzma, Buffalo, NY, *for Plaintiff-Appellant*.

Daniel Tenny and David L. Peters, *for* Brian M. Boynton, Principal Deputy Assistant Attorney General, Washington, D.C., *and*

*for* Trini E. Ross, United States Attorney for the Western District of New York, Buffalo, NY, *for Defendant-Appellee.*

PER CURIAM:

In 2016, a federal jury found Steve Satar Jabar guilty of wire fraud and related charges stemming from his misuse of thousands of dollars from a United Nations grant. One month after the guilty verdict, Jabar asked the Federal Bureau of Investigation to turn over all documents related to him under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, speculating that they might include exculpatory information that the government had not disclosed in his criminal trial. While awaiting a response, Jabar filed this FOIA action against the United States Department of Justice, of which the FBI is a part. The government eventually produced 21 sets of responsive documents and an index detailing FOIA exemptions under which it withheld other responsive documents. The government then moved for summary judgment, including with its motion an affidavit

detailing its search methodologies, the FOIA exemptions under which it withheld documents, and its efforts to redact and produce segregable portions of exempt documents. The district court declined to review the withheld documents *in camera* and granted the government's motion for summary judgment. Jabar now appeals, arguing (1) that summary judgment was improperly granted because his FOIA action is an effort to vindicate his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), and (2) that, in the alternative, the district court erred in not conducting an *in camera* inspection of withheld documents.

We hold otherwise. As we explained in *Brown v. Federal Bureau of Investigation*, 658 F.2d 71, 75 (2d Cir. 1981), FOIA and the criminal discovery process provide distinct tracks for seeking disclosure from the government. That a FOIA action might help a particular criminal defendant discover documents useful to his defense changes neither the government's statutory obligations under FOIA, nor the

4

government's burden at summary judgment. Accordingly, the district court properly granted summary judgment to the government. Further, the district court acted well within its discretion in declining to conduct *in camera* review of the withheld documents, as the government's affidavit described its efforts to search, review, and redact documents with sufficient particularity for the court to decline *in camera* review, and Jabar failed to challenge the veracity of the government's declaration. We therefore AFFIRM the judgment of the district court.

## I.    Background

Plaintiff-Appellant Steve Satar Jabar moved to the United States from Iraq in 1989 and became a United States citizen in 1996. In 1995, Jabar and Deborah Bowers founded a non-profit organization called Opportunities for Kids International ("OKI") to assist refugees in New York. *See United States v. Jabar*, 19 F.4th 66, 72 (2d Cir. 2021), *cert. denied sub nom. Bowers v. United States*, 142 S. Ct. 1396 (2022) (mem.).

In June 2004, Jabar and Bowers applied on behalf of OKI to the United Nations Development Fund for Women for a $500,474 grant to establish a radio station in Iraq called Voice of Women, intended to broadcast educational programming to women. *Id.* at 72–73. On December 15, 2004, OKI received the first $350,000 disbursement of that grant. *Id.* at 73. Jabar and Bowers, however, did not comply with the grant's financial reporting requirements, and converted more than $65,000 of those funds to personal use. *Id*. at 73–74. In 2005, the Internal Revenue Service began investigating OKI based on multiple suspicious activity reports from financial institutions, and on May 21, 2009, a grand jury in the Western District of New York indicted Jabar and Bowers on fraud, money laundering, and false statement charges. *Id*. at 74–75.

On September 2, 2016, at a trial before Judge Lawrence J. Vilardo, a jury convicted Jabar and Bowers of conspiring to commit wire fraud, wire fraud, and making false statements. *Id.* at 75. Jabar

6

moved for a judgment of acquittal under Rule 29 and, in the alternative, for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. *Id.* On September 27, 2017, the district court, citing insufficient evidence, granted his post-verdict motion for acquittal as to the conspiracy and wire fraud charges. *Id.* The government appealed and, on November 19, 2021, our Court reversed the acquittal and remanded the case to the district court for consideration of Jabar's new trial motion. *Id*. at 72. Jabar's motion for a new trial remains pending before Judge Vilardo.

By letter dated October 10, 2016, Jabar submitted a request to the FBI under FOIA and the Privacy Act, 5 U.S.C § 552a, seeking all documents pertaining to him held by the Bureau.[1] On April 10, 2017, while awaiting a response to his FOIA request, Jabar filed his

---

[1] Although Jabar's FOIA request was submitted under both FOIA and the Privacy Act, on appeal Jabar contends only that summary judgment was improperly granted because "FOIA may be used to remedy [*Brady*] violations and the District Court erred by not conducting an *in camera* inspection of the records withheld in full to determine if there were any segregable portions." Appellant Br. at 2. We therefore confine our analysis to FOIA.

complaint in this case in the United States District Court for the Western District of New York.

The FBI has since processed 5,368 pages of documents responsive to Jabar's FOIA request. Across 21 interim releases of records, the government released 154 pages in full, released 632 pages in part, and withheld 4,582 pages in full. On March 13, 2020, following its search and productions, the Department of Justice filed an index containing documents withheld in whole or part, alongside justifications for the asserted disclosure exemptions, fulfilling its obligation under *Vaughn v. Rosen*, 484 F.2d 820, 826–27 (D.C. Cir. 1973). Upon the agreement of the parties, the government's *Vaughn* index covered only a 503-document sample of the responsive documents.

On November 30, 2020, the government moved for summary judgment. In support of that motion, the government filed an affidavit from Michael G. Seidel, Section Chief of the

8

Record/Information Dissemination Section of the Information Management Division at the FBI (the "Seidel Declaration"). Seidel described the FBI's filing system, its search methodology, and its justifications for refusing to release the withheld documents.

On November 24, 2021, United States Magistrate Judge Leslie G. Foschio issued a Report and Recommendation recommending that the government's summary judgment motion be granted and that *in camera* review of the withheld documents be denied. On January 12, 2022, United States District Judge John L. Sinatra, Jr., adopted the Report and Recommendation in full and entered judgment for the Department of Justice. Jabar now appeals.

## II.   Discussion

We review the grant of summary judgment *de novo, see Long v. Off. of Pers. Mgmt.*, 692 F.3d 185, 191 (2d Cir. 2012), and a district court's decision about whether to conduct *in camera* review of documents withheld under FOIA for abuse of discretion, *see Associated Press v. U.S. Dep't of Justice*, 549 F.3d 62, 67 (2d Cir. 2008).

9

On appeal, Jabar argues that summary judgment was improperly granted because FOIA may be used to remedy violations of the government's obligations to disclose exculpatory evidence as articulated in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny. In the alternative, Jabar contends that the district court erred in declining to conduct an *in camera* inspection of the withheld records to determine if any portions were segregable.

### A. Background legal frameworks

Congress enacted FOIA to "facilitate public access to Government documents." *U.S. Dep't of State v. Ray*, 502 U.S. 164, 173 (1991). The statute requires that agencies search for and promptly make available records in response to requests that reasonably describe the records sought. *See* 5 U.S.C. § 552(a)(3). FOIA is premised on "a policy strongly favoring public disclosure of information in the possession of federal agencies." *Halpern v. Fed. Bureau of Investigation*, 181 F.3d 279, 286 (2d Cir. 1999). Accordingly, "[a]gencies are required to disclose requested documents unless they

fall within an enumerated exemption." *Knight First Amend. Inst. at Columbia Univ. v. U.S. Citizenship & Immigr. Servs.*, 30 F.4th 318, 327 (2d Cir. 2022). FOIA authorizes courts "to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant." 5 U.S.C. § 552(a)(4)(B); *see also N.Y. Legal Assistance Grp. v. Bd. of Immigr. Appeals*, 987 F.3d 207, 215–25 (2d Cir. 2021) (construing FOIA's remedial provision).

In a criminal prosecution, such as Jabar's, the government has independent disclosure obligations, including under Rule 16 of the Federal Rules of Criminal Procedure and *Brady v. Maryland*, 373 U.S. at 87. *Brady* and its progeny have identified "an affirmative duty" on the part of the government "under the Due Process Clause 'to disclose favorable evidence known to it, even if no specific disclosure request is made by the defense.'" *United States v. Hunter*, 32 F.4th 22, 30 (2d Cir. 2022) (quoting *United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir.

11

1995)).  A *Brady* violation occurs where the evidence at issue was favorable to the defendant, the evidence was suppressed by the government, and the defendant was prejudiced by the suppression of that evidence.  *See Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).  "[T]he remedy for a *Brady* violation is *vacatur* of the judgment of conviction and a new trial in which the defendant now has the *Brady* material available to her."  *Poventud v. City of New York*, 750 F.3d 121, 133 (2d Cir. 2014).

### B. Summary judgment

With these principles in mind, we turn to Jabar's argument that the district court improperly granted summary judgment to the Department of Justice.  He argues that the government's disclosure obligations under FOIA are expanded, or in some manner altered, by

12

his rights under *Brady*, and thus the district court erred in granting summary judgment.[2] We disagree.

We begin with the principle that FOIA and *Brady* give rise to distinct government disclosure obligations. FOIA involves a statutorily created process that requires a government agency to disclose properly requested agency records to anyone making the request, unless one of the enumerated exemptions within the statute applies. *See* 5 U.S.C. § 552(a)–(b); *Carney v. U.S. Dep't of Just.*, 19 F.3d 807, 812 (2d Cir. 1994). In contrast, *Brady* and its progeny articulate an affirmative duty of disclosure, implicit in the Due Process Clause

---

[2] Jabar describes his argument as a claim that "*Brady* violations may be remedied by FOIA." Appellant Br. at 2 (cleaned up). This phrasing, however, turns the substance of his argument around, because Jabar has no evidence of a *Brady* violation for which he seeks a remedy. If he had such evidence, the proper remedy would be to file a Rule 33 motion for a new trial in his criminal case. *See Poventud*, 750 F.3d at 133. Jabar instead filed his FOIA action seeking records that he contends might assist him either in his criminal trial if the district court grants his pending motion for a new one, or in prevailing on that pending motion. His argument, in other words, is that he *suspects* a *Brady* violation might have occurred and wants to use FOIA to see if there is evidence of such a violation. Thus, this case presents the question of whether *Brady* expands or alters the government's FOIA obligations when the requester is seeking documents in the hope of demonstrating a *Brady* violation. As we explain here, it does not.

of the Constitution, that requires prosecutors to turn over certain materials to a defendant in a criminal case. *See Hunter*, 32 F.4th at 30.

In *Brown v. Federal Bureau of Investigation*, we affirmed summary judgment in favor of the government on a FOIA claim despite the plaintiff's hope "to obtain evidence sufficient to mount a collateral attack on his kidnapping conviction." 658 F.2d at 75. In that case, the government had withheld the requested documents pursuant to FOIA Exemptions 6 and 7, *id*. at 74, both of which "require a balancing of the individual's right of privacy against the preservation of the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny."[3] *Dep't of the Air Force v. Rose*,

---

[3] FOIA Exemption 6 covers "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). And FOIA Exemption 7 covers

> records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (A) could reasonably be expected to interfere with enforcement proceedings, (B) would deprive a person of a right to a fair trial or an impartial adjudication, (C) could reasonably be expected to constitute an unwarranted invasion of

14

425 U.S. 352, 372 (1976) (internal quotation marks omitted).  Brown did not contend that the withheld documents fell outside those FOIA exemptions; rather, he argued that he needed the documents to overturn his criminal conviction.  *See Brown*, 658 F.2d at 75.  We rejected that argument, holding that a plaintiff's personal interest in obtaining evidence "cannot . . . enter into the weighing or balancing process[, because] FOIA is not intended to be an administrative discovery statute for the benefit of private parties."[4]  *Id.* (internal quotation marks omitted).

---

personal privacy, (D) could reasonably be expected to disclose the identity of a confidential source, . . . , (E) would disclose techniques and procedures for law enforcement investigations or prosecutions, . . . , or (F) could reasonably be expected to endanger the life or physical safety of any individual[.]

*Id.* at § 552(b)(7).

[4] Brown also asserted that disclosure pursuant to his FOIA request would serve the public interest in "the fair and even-handed administration of our criminal justice system."  *Id.* at 75 (internal quotation marks omitted).  We found, however, that "[a]ny benefits accruing to the public by virtue of the possibility that [Brown] may win a new trial are too uncertain, indirect, and remote" to warrant disclosure of otherwise exempt documents under a public interest balancing.  *Id.* at 76.  Indeed, "the only relevant public interest in the FOIA balancing analysis" is "the extent to which disclosure of the information sought would 'she[d] light on

Our holding in *Brown* defeats Jabar's argument here. Jabar filed his FOIA request seeking documents to attack his criminal conviction (and, if his pending new trial motion is granted, to defend himself in further proceedings in that criminal case). But as we held in *Brown*, FOIA has no special rules or exceptions that apply when the documents sought relate to a criminal case. It is certainly conceivable that a FOIA request could elicit documents that would undermine a requester's criminal conviction, including by demonstrating a *Brady* violation. But that possibility does not alter the government's obligations under FOIA. Jabar's effort to conflate these two doctrines defies both the statutory structure of FOIA and our case law, and the district court properly rejected his argument. *See Brown*, 658 F.2d at 75; *see also Williams & Connolly v. Sec. & Exch. Comm'n*, 662 F.3d 1240,

---

an agency's performance of its statutory duties' or otherwise let citizens know 'what their government is up to.'" *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 497 (1994) (quoting *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989)). Jabar does not argue that an interest balancing analysis was warranted here, much less does he articulate a properly defined public interest in disclosure.

1245 (D.C. Cir. 2011) (explaining that "disclosure in criminal trials is based on different legal standards than disclosure under FOIA" and that "FOIA is neither a substitute for criminal discovery, nor an appropriate means to vindicate discovery abuses"); *Boyd v. U.S. Dep't of Justice*, 475 F.3d 381, 390 (D.C. Cir. 2007) ("Amicus's suggestion that an agency's compliance with FOIA is nonetheless deficient where the agency may allegedly have failed to make the trial prosecutor aware of *Brady* material conflates two separate procedures by which a defendant may obtain information from the government.").

The out-of-circuit cases Jabar cites for support are inapposite. He points to *United States v. Murdock*, 548 F.2d 599, 602 (5th Cir. 1977), to suggest that information discovered through FOIA may be used at a criminal trial. True enough, but as the Fifth Circuit wrote in *Murdock*:

> the discovery provisions of the Federal Rules of Criminal Procedure and the FOIA *provide two independent schemes* for obtaining information through the judicial process. Although information obtained through the FOIA may

> be useful in a criminal trial, we find that the *FOIA was not intended as a device to delay ongoing litigation or to enlarge the scope of discovery* beyond that already provided by the Federal Rules of Criminal Procedure.

548 F.2d at 602 (emphasis added). Likewise, in *Price v. U.S. Dep't of Justice Attorney Office*, the D.C. Circuit suggested that FOIA can uncover undisclosed *Brady* material and other evidence relevant to a criminal case. 865 F.3d 676, 682 (D.C. Cir. 2017). But the court made this general observation only by way of background, in the course of holding that a waiver of FOIA rights included in a defendant's plea agreement was, in that specific instance, contrary to public policy. *Id.* at 683. Nowhere in *Price* did the D.C. Circuit suggest that *Brady*, or other government disclosure obligations in criminal matters, such as through Rule 16 of the Federal Rules of Criminal Procedure, altered FOIA's explicit statutory scheme. *See id.* at 679–83.[5] And, of course,

---

[5] Jabar also cites *Ferri v. Bell*, in which the Third Circuit overturned a grant of summary judgment for the government in a FOIA action. *See* 645 F.2d 1213, 1218 (3d Cir. 1981), *modified by* 671 F.2d 769 (3d Cir. 1982). He is correct that *Ferri* found the defendant's interest in overturning his conviction might constitute a public interest for the purposes of balancing public and private interests under FOIA

even if these other Circuits had intimated to the contrary, we would still be bound by our decision in *Brown*.

With Jabar's *Brady* argument squarely foreclosed, the merits of the summary judgment motion are straightforward. The government can "prevail on a motion for summary judgment in a FOIA case" by "showing that its search was adequate," "that any withheld documents fall within an exemption to the FOIA," *Carney*, 19 F.3d at

Exemption 6. *See id.* at 1218 ("[A] FOIA request for material implicating the *Brady* rule simultaneously advances an 'indirect public [interest] purpose' satisfying the second prong of the test for disclosure under one of the privacy-based exemptions." (quoting *Wine Hobby USA, Inc. v. U.S. Internal Revenue Serv.*, 502 F.2d 133, 137 (3d Cir. 1974))). *Ferri*, however, does not advance Jabar's argument. First, since *Ferri*, the Supreme Court has clarified that "the *only* relevant 'public interest in disclosure' to be weighed" against an individual's privacy interest "is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contribut[ing] significantly to public understanding of the operations or activities of the government.'" *Fed. Lab. Rels. Auth.*, 510 U.S. at 497 (emphasis added) (quoting *Reps. Comm. for Freedom of the Press*, 489 U.S. at 775). Second, most courts to rule on the issue—and most pointedly ours in *Brown*—have "sensibly refused to recognize, for purposes of FOIA, a public interest in nothing more than the fairness of a criminal defendant's own trial." *Neely v. FBI*, 208 F.3d 461, 464 (4th Cir. 2000); *see also Brown*, 658 F.2d at 76 ("Any benefits accruing to the public by virtue of the possibility that [the defendant] may win a new trial are too uncertain, indirect, and remote to mandate an abrogation of" an individual's right to privacy). Third, in any event, Jabar fails to argue that those documents withheld under FOIA Exemption 7 ought to be released under a weighing of public and government interests, and thus has waived any argument that *Ferri*, 645 F.2d at 1218, bears on—or ought to bear on—this case.

812, and that "any reasonably segregable non-exempt portion of an agency record [was] released," *Lead Indus. Ass'n v. Occupational Safety & Health Admin.*, 610 F.2d 70, 88 (2d Cir. 1979). Agency declarations are sufficient to carry the government's burden where they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record or by evidence of agency bad faith." *Knight*, 30 F.4th at 327 (internal quotation marks omitted). Agency affidavits "are accorded a presumption of good faith." *Carney*, 19 F.3d at 812 (internal quotation marks omitted). "[O]nce the agency has satisfied its burden," the requester "must make a showing of bad faith on the part of the agency sufficient to impugn the agency's affidavits or declarations or provide some tangible evidence that an exemption claimed by the agency should not apply or summary judgment is otherwise inappropriate." *Id.* (citation omitted); *see also id.* at 813

(concluding that "something more than . . . bare allegations is needed" to rebut an agency's affidavits in support of summary judgment).

Summary judgment was properly granted here. As the district court determined, the Seidel Declaration describes the nature of the government's search, the various justifications for the documents withheld, and the government's efforts to provide Jabar with all reasonably segregable non-exempt information. Jabar has provided no basis to call the Seidel Declaration into question, and that declaration is therefore sufficient to carry the government's burden. *See id.* at 812. Accordingly, the district court properly granted summary judgment to the government.

### C.    *In camera* **review**

Jabar also contends that the district court erred in declining to conduct an *in camera* review of documents withheld in full to determine if any portions of those documents were segregable. But the decision whether to conduct an *in camera* review of documents

withheld in response to a FOIA request is one that falls within the informed discretion of the district court, which we will not disturb lightly. *See Associated Press*, 549 F.3d at 67. "Under 5 U.S.C. § 552(a)(4)(B), district courts are authorized to conduct *in camera* review of disputed documents to determine whether the documents, in whole or part, are properly withheld under a FOIA exemption." *Id.; see also In re City of New York*, 607 F.3d 923, 949 (2d Cir. 2010) (observing that a "district court may, in the exercise of its informed discretion and on the basis of the circumstances presented, require that the party possessing the [potentially privileged] documents appear *ex parte* in chambers to submit the documents for *in camera* review by the judge"); *In re Grand Jury Subpoenas Dated March 19, 2002 & August 2, 2002*, 318 F.3d 379, 386 (2d Cir. 2003) (describing *in camera* review as a "practice both long-standing and routine in cases involving claims of privilege"). It is appropriate

> where the government seeks to exempt entire documents but provides only vague or sweeping claims as to why

22

those documents should be withheld. Only if the government's affidavits make it effectively impossible for the court to conduct de novo review of the applicability of FOIA exemptions is *in camera* review necessary.

*Associated Press*, 549 F.3d at 67 (citation omitted).

Here, the magistrate judge's report and recommendation, adopted in full by the district court, considered the Seidel Declaration's detailed justifications for withholding documents in full. It further noted that Jabar had not provided any basis to question Seidel's affirmation that documents withheld in full were either entirely subject to a FOIA exemption or included only information "so intertwined with exempt material" that "no information could be reasonably segregated for release." Seidel Declaration ¶ 163. Because the Seidel Declaration was sufficiently detailed, and because Jabar has failed to present any argument or justification for questioning that declaration, the district court acted well within its discretion in declining to conduct *in camera* review of those documents withheld in

23

full. *See Halpern*, 181 F.3d at 295 ("*In camera* review is considered the exception, not the rule, and the propriety of such review is a matter entrusted to the district court's discretion." (internal quotation marks omitted)); *Armstrong v. Exec. Off. of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (finding no abuse of discretion in declining to conduct *in camera* review where the government's explanations were legally adequate on their face).

## III.  Conclusion

In sum, we hold as follows:

1.  The district court did not err in granting summary judgment to the government in this FOIA action because *Brady v. Maryland*, 373 U.S. 83 (1963), does not alter the government's statutory obligations under FOIA, and because Jabar has not challenged the government's otherwise sufficient declaration.

24

2. The district court acted within its discretion in declining to conduct *in camera* review of documents the FBI withheld in full pursuant to FOIA exemptions.

We therefore AFFIRM the judgment of the district court.